JUDGE BAER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

XIAOLU "PETER" YU,                                      :

                      **Plaintiff,**          :

    **-against-**                                     :

VASSAR COLLEGE,                                         :

                    **Defendant.**        :

-------------------------------------------------------------X

13 CV 4373

COMPLAINT

JURY TRIAL
DEMANDED

RECEIVED
JUN 25 2013
U.S.D.C. S.D. N.Y.
CASHIERS

     Plaintiff Xiaolu "Peter" Yu, ("Peter Yu"), by his attorneys Nesenoff &

Miltenberg, LLP, as and for his Complaint, respectfully alleges as follows:

## THE NATURE OF THIS ACTION

     1.    This case arises out of the actions taken and procedures employed by

Defendant Vassar College ("Defendant Vassar") concerning allegations made

against Peter Yu, a male, foreign freshman student at Defendant Vassar with a 3.8

GPA and an otherwise unblemished record.  The allegations were lodged by fellow

Vassar sophomore student, Mary Claire Walker ("Ms. Walker"), belatedly and

falsely accusing Plaintiff Peter Yu of nonconsensual sex with her.   These

allegations purportedly referred to what was clearly consensual sexual activity that

had occurred one year before the allegations were even made.  After that one night

of consensual sex, for which Ms. Walker took off her own clothes, Peter Yu and

Ms. Walker amicably texted each other and were teammates on Defendant Vassar's

crew team; no police report was ever filed by Ms. Walker in connection with the sexual activity with Peter Yu; no visit to a medical care facility was ever made by Ms. Walker in connection with the sexual activity with Peter Yu; and indeed, no allegation of improper sexual behavior was made by Ms. Walker for a whole year after the one night of sexual activity with Peter Yu.  Yet, Defendant Vassar found Peter Yu guilty of sexual misconduct in having nonconsensual sex with Ms. Walker and has ordered Peter Yu's expulsion from school there.

2.     When Defendant Vassar found Peter Yu guilty of sexual misconduct, Peter Yu was not afforded due process and was discriminated against on the basis of his male sex.  Peter Yu was denied the effective assistance of any advisor; cross-examination of his accuser was effectively denied; Peter Yu was denied being able to call other witnesses; and the hearing tribunal immediately announced its decision upon conclusion of an abbreviated session, reflecting the lack of impartiality and pre-judgment against an accused male student.  Defendant Vassar failed to adhere to its own guidelines and regulations, and the guidelines and regulations themselves are insufficient to enable a student to have a fair hearing before an impartial tribunal.  The decision reached was discriminatory; given the evidence (or lack thereof), a discriminatory bias against males was required for a conclusion of sexual misconduct to be reached and expulsion ordered.

2

3.     Peter Yu has been greatly damaged by the expulsion: Peter Yu's student visa sponsored by Vassar College has been terminated; his academic future in the United States is severely damaged; the monies spent on obtaining a college education at Defendant Vassar lost; and the real sacrifices made by Peter Yu's family so that Peter Yu could get an education in the United States wasted.  Peter Yu therefore brings this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972 and state law.

## THE PARTIES

4.     Plaintiff Xiaolu "Peter" Yu, ("Peter Yu"), is a natural person and non-citizen of the United States.  During the events described herein, Peter Yu was a student at Vassar College and resided on the Vassar College campus in Poughkeepsie, New York.

5.     Upon information and belief, Defendant Vassar College ("Defendant Vassar") is a private, coeducational liberal arts college in the town of Poughkeepsie, New York.  Upon information and belief, Defendant Vassar was founded as a women's college in 1861 and became coeducational in 1969.

6.     Peter Yu and Defendant Vassar are sometimes hereinafter collectively referred to as the "Parties".

3

## JURISDICTION AND VENUE

7.     This Court has diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and under 28 U.S.C. § 1332 because: (i) Peter Yu and Defendant Vassar are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest; and (ii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

8.     This Court has personal jurisdiction over Defendant Vassar on the grounds that Defendant Vassar is conducting business within the State of New York.

9.     Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I.  Peter Yu's Journey to the United States

10.    Peter Yu is a citizen of Dalian, China and came to the United States to receive a first-rate education to ensure his future success and contributions back to his family in China.

4

11.     Growing up in northeastern China, Peter Yu's parents sacrificed and saved for many years with one goal in mind: to pay for their only son's education in the United States with the hope that it will lead their son to a better life.   The intention was for Peter Yu to one day "pay it back" by becoming successful enough to support himself and take care of his parents in their old age in the future.

## II. Agreements, Representations, Covenants & Warranties Between Peter Yu and Defendant Vassar

12.     Prior to his enrollment in Vassar College, Peter Yu was a successful high school honors student and student athlete at a prestigious high school academy in Connecticut.   Peter Yu attained a 4.19/4.33 grade point average, possessed numerous accolades, both scholastic and athletic, and scored in the 98% percentile in the SAT standardized college entrance examination.

13.     In addition to achieving a high grade point average and competitive SAT scores, Peter Yu also obtained five (5) advanced placement credits in microeconomics, macroeconomics, physics mechanics, physics electronics and calculus, and obtained four (4) advanced placement credits in chemistry and biology.   Needless to say, whatever college Peter Yu would enter, he would be starting at a sophomore level due to his credits. Sky was the limit for Peter Yu.   He had a bright future ahead of him.

14.     In addition to Vassar College, Peter Yu was accepted to five other colleges; NYU, Northeastern, Wesleyan, Bates and Carnegie Mellon.

15.     After weighing the various factors and considerations of each college, Peter Yu made a conscious and informed decision to continue his path to a bright future at Vassar College, and began classes for the 2011-2012 academic year.

16.     Upon his acceptance, Defendant Vassar provided Peter Yu with copies of its "Student Handbook" and "Vassar College Regulations".  Such documents are also readily available on Defendant Vassar's Internet website.

17.     Vassar College Regulations state, among other things:

The college prohibits discrimination on the basis of race, color, religion or religious belief, citizenship status, sex, marital status, disability, pregnancy, sexual orientation, gender identity or expression, national origin, military service or affiliation, genetic information, age and any other characteristics protected by law.

See Vassar College Regulations, p. 109.

18.     Vassar College's Mission Statement states, in part:

The primary mission of Vassar College, to furnish "the means of a thorough, well-proportioned, and liberal education," was articulated in *The First Annual Catalogue* and has remained constant throughout its history. Founded in 1861 to provide young women an education equal to that once available only to young men, the college has since 1969 opened its doors **to both women and men on terms of equality**.

See Vassar College Student Handbook, p. 2.

19.     As its overarching goal, Vassar College purports that:

6

> **Vassar College is committed to working toward a more just, diverse, egalitarian, and inclusive college community where all members feel valued and are fully empowered to claim a place in**—and responsibility for—**our shared working, living, and learning**. The college affirms the inherent value of a diverse campus and curriculum reflective of our lives as members of multiple local and global communities.

See Vassar College Student Handbook, p. 3.

20.     In the Fall of 2011, Peter Yu traveled to Poughkeepsie, New York to join the class of 2015 at Vassar College.

### III.   Peter Yu's Athletic and Academic Record at Vassar College and Peter Yu's First Introduction to Ms. Walker

21.     Shortly after starting his freshman year at Vassar College, the Peter Yu became a member of Vassar College's rowing team.

22.     Peter Yu was a rising member of the rowing team, displaying early signs of success; he received a medal from Villanova University's "Knecht Cup" Race and became a varsity team rower in his sophomore year at Vassar College.

23.     As a member of the rowing team, Peter Yu became acquainted with fellow team members and participated in team events, which took place both on- and off-campus.

24.     In particular, Peter Yu met a fellow team member, Mary Claire Walker.  Ms. Walker was a year ahead of Peter Yu's 2015 class with family ties to

Vassar College -- Ms. Walker's father has been a member of the Geology Department of Vassar College for 25 years (since 1988).

25.     On January 29, 2012, Peter Yu and Ms. Walker both attended a rowing team formal party at an on-campus location, at which Ms. Walker first demonstrated her romantic interest in Peter Yu.  They discussed their respective romantic relationships and the fact that Peter Yu and his romantic interest at the time, Sara Cooley, were interested in each other, but not yet boyfriend and girlfriend.  Leaving the team formal party together, Ms. Walker accompanied Peter Yu on his walk to Shiva Theater, a few blocks away and the two parted ways for the evening.

26.     At the time, Peter Yu had a 3.8 GPA at Vassar College.

**IV.     The Alleged Incident Between Peter Yu and Ms. Walker**

27.     On or about the evening of February 18, 2012, Peter Yu attended an on-campus rowing team party.  Ms. Walker was also in attendance at the party that night.  Both Ms. Walker and Peter Yu had consumed alcohol at the party.  Toward the end of the party, Peter Yu and Ms. Walker began to talk to each other.

28.     During their conversation, Peter Yu learned that Ms. Walker had just broken up with her boyfriend.  As they talked, Ms. Walker voluntarily made two drinks for Peter Yu.  As the party died down, Peter Yu and Ms. Walker left the

8

party together and walked (unaided) to, Matthew's Mug a/k/a "The Mug", which is one of the leading on-campus nightlife dance venues.

29.     During the walk over to The Mug, Ms. Walker placed her arm around Peter Yu's shoulders as a sign of intimacy; not for support as she was walking on her own just fine.  Upon entering The Mug, Peter Yu and Ms. Walker kissed.  The Mug was nearly empty that night.  As the night continued on, Peter Yu and Ms. Walker continued to kiss.  Ms. Walker agreed to leave The Mug to have sex with Peter Yu.  Figuring out where to go, Ms. Walker phoned her roommate to inquire about the "availability" of her dorm room at Strong House.  Ms. Walker was unable to reach her roommate so they decided to go back to Peter Yu's dorm room at Jewett House instead.

30.     Ms. Walker placed her arms around Peter Yu again as they walked from The Mug to Jewett House.  During the walk Ms. Walker asked Peter Yu whether Peter Yu wanted to have breakfast or dinner with her the next day, to which Peter Yu responded, "no".  Upon reaching Peter Yu's dormitory, they took the stairs to Peter Yu's room on the fourth floor.

31.     Ms. Walker went to use the bathroom on the fourth floor before meeting Peter back at his dorm room.  When Ms. Walker came to his room, Peter

Yu left to use the bathroom himself while Ms. Walker waited for him in his room – with ample opportunity to leave at any time.

32.    Upon his return to the dorm room, Peter Yu informed Ms. Walker that it was "his first time" and she responded, "it's okay, I know what to do".  Ms. Walker then began to undress herself.  Peter Yu did the same with his clothes, with the assistance of Ms. Walker.

33.    At the time, Ms. Walker possessed a medium to large build, weighing approximately 160 lbs.  Ms. Walker was muscular and physically fit as a result of undergoing rigorous training on the rowing team.

34.    Standing naked in front of each other, Peter Yu made a self-deprecating remark about his physical appearance, but Ms. Walker reassured him. They began to kiss and Ms. Walker began to perform oral sex on Peter Yu stating, "I know how to do this; I have done this before".  Ms. Walker picked up the condom next to the bed, and using her hand and her teeth, she ripped it open to place it on Peter Yu.  Peter Yu began performing oral sex on Ms. Walker while she instructed him on where and how to do so.   At one point, Ms. Walker asked Peter Yu, "Did you learn this from the internet or do you just now it by yourself?"  Peter Yu and Ms. Walker began engaging in sexual intercourse while kissing the entire time.  At one point, Ms. Walker changed positions and got on top of Peter Yu.

35.    While in the act, Peter Yu's roommate, Simon Patane, entered the room and, after seeing Peter Yu and Ms. Walker, Peter Yu asked him to leave. Following the interruption, Peter Yu and Ms. Walker did not resume sexual intercourse.  Ms. Walker began to lament about her ex-boyfriend and stated that she was not ready to jump into "anything new".  Ms. Walker began to get dressed again and commented on how she "took Peter Yu's virginity".

36.    Shortly after Ms. Walker left Peter Yu's dorm room, Peter Yu's resident advisor, Zachary Hays, knocked on his door.  Mr. Hays asked Peter Yu to step out into the hallway and questioned him about his "party habits".  Meanwhile, Peter Yu noticed a fellow Vassar College student, Carolina Gustafson, standing at the doorway of Peter Yu's dorm room.  Later it was discovered that Ms. Gustafson had coordinated with Mr. Hays that night so that she would have the opportunity to enter Peter Yu's dorm room to do a "search" for Ms. Walker while Mr. Hays distracted Peter Yu in the hallway.  Of course Ms. Gustafson's "search" yielded nothing since Ms. Walker had already left Peter Yu's room by that time.

37.    The next morning, on February 19, 2012, Mr. Hays advised Peter Yu that fellow students at Vassar College, whose identities were later discovered to be Sara Cooley (Peter Yu's former romantic interest and fellow rowing team member) and Ms. Gustafson (a close friend of Ms. Walker's and also a fellow rowing team

11

member), had spotted Peter Yu walking with Ms. Walker, who appeared to be drunk, and tried to alert campus security. However, campus security never visited Peter Yu the night before.

38.     Wanting to set the record straight, Peter Yu reached out to Ms. Walker on Facebook and exchanged several Facebook emails wherein Ms. Walker reassured Peter Yu that she "had a wonderful time last night", that nothing bad happened, that Peter Yu "did nothing wrong", that she would "stand up for [Peter Yu]" if any charges were brought, that Ms. Walker was "really sorry [she] led [him] on last night" and that she just wasn't ready for a serious relationship since she was "too close to [her] previous relationship to be in one right now".

39.     Peter Yu and Ms. Walker continued to exchange friendly emails on Facebook on March 20, 2012, May 3, 2012, May 4, 2012, May 15, 2012, and October 9, 2012. In fact, one month after the alleged incident, Ms. Walker initiated a Facebook email to Peter Yu to, once again, "apologize for that night about two months ago" and said she was "really sorry" and that she "[didn't] want it to effect [their] friendship or team dynamic". At one point, Ms. Walker even text messaged Peter Yu to invite him to dinner at her home. Ms. Walker initiated 50% of the emails to Peter Yu on her own. At no time did Ms. Walker ever indicate that she was fearful of Peter Yu or that she believed Peter Yu had raped her.

40.    In fact, Peter Yu never raped Ms. Walker because they engaged in consensual sexual intercourse.

## V. **Defendant Vassar's Mishandling of the Alleged Incident**

41.    On February 19, 2013, exactly one (1) year following the incident, Defendant Vassar contacted Peter Yu to advise him that a fellow student had made allegations of sexual assault against Peter Yu.  Defendant Vassar charged Peter Yu with violations of Section 5.05 (Sexual Misconduct) and Section 20.1 (Sexual Offenses) of the Student Handbook.

42.    The very next day, Defendant Vassar's Title IX investigator, Richard Horowitz, interviewed Peter Yu and took Peter Yu's written statement of the alleged incident.

43.    Armed with clear evidence of the complicit nature of the evening in question and the established friendship between Peter Yu and Ms. Walker, Peter Yu handed Mr. Horowitz the record of Facebook emails in connection with his written statement.

44.    On February 21, 2013, Mr. Horowitz provided the record of Facebook emails to Ms. Walker and presumably asked for an explanation.  Scrambling to cover her tracks and grasping for some kind of justification in the face of such contradictory evidence to the facts she alleged to have occurred on the night in

question, Ms. Walker fabricated her story again:   Ms. Walker claimed that she wrote all of the Facebook emails "out of fear", notwithstanding that she had initiated 50% of the Facebook emails herself.

45.    On March 4, 2013, Peter Yu was given the opportunity to review Defendant Vassar's file of the charges against him in the Office of the Dean of Students.   Peter Yu noticed that Ms. Gustafson had provided a written statement for the file where she claimed to have witnessed Ms. Walker and Peter Yu walking together on the evening in question.   Also, Peter Yu reviewed Mr. Horowitz's "Final Investigation Notes" of the alleged incident for the file.   Mr. Horowitz purportedly based his notes on his "investigation", including written statements he received from Ms. Walker, Peter Yu and Ms. Gustafson.   Yet, upon close examination, Mr. Horowitz's notes appeared to: (i) "cherry pick" statements from each witness without providing their full context; (ii) took Ms. Walker's statements as true; (iii) glossed over Ms. Walker's unexplained inconsistencies; and (iv) framed the statements in a way that reflected his own biased decision that Peter Yu was guilty. In sum, Mr. Horowitz noted that Peter Yu was being charged with violation of Section 5.05 (Sexual Misconduct) and Section 20.1 (Sexual Offenses) of the Student Handbook.   Noticeably absent from Mr. Horowitz's report is the mention of

(or explanation for its absence) any police report or health examination/rape kit made in connection with the alleged incident, i.e. any supporting evidence

46.   One week later, on February 27, 2013, Peter Yu received an official email from the Dean of Students about the formal charges and the scheduled date of the Formal Grievance Hearing for March 7, 2013.

47.   The following day, Peter Yu requested a short adjournment of the hearing date in order to adequately prepare for same, and because it was in the middle of midterms. However, his request was denied; Vassar College claimed that it wanted to conduct the hearing before the start of Spring Break on March 8, 2013. The Dean of Students, David Brown, sought to "reassure" Peter Yu and claimed that he "didn't need to worry about taking the midterms" because Mr. Brown was going to "speak to the Dean of Studies" and "write an explanation" so that he would not need to take the midterms. It was clear from the odd explanations being given that the state of Peter Yu's future at Vassar College was transient at best. Intent on fighting for his future at Vassar College, despite the great stress and pressure from the impending hearing, Peter Yu sat for his midterms anyway – and did very well.

48.   On March 7, 2013, the Formal Grievance Hearing ("Hearing") convened at 6:00 p.m. Peter Yu was allowed to be accompanied by a supporting faculty member, but the faculty member was prohibited from providing any

15

feedback at the Hearing.  Peter Yu was not entitled to have legal representation at the Hearing.

49.    In accordance with his rights under the Vassar College Regulations, Peter Yu requested that a student be allowed to sit on the panel of the Hearing ("Panel").  However, his request was denied and the Hearing was comprised of faculty members only; all of whom were fellow colleagues of Ms. Walker's father, a professor at Vassar College since 1988.

50.    In accordance with his rights under the Vassar College Regulations, Peter Yu sought to have 2 witnesses at the Hearing; Ms. Walker's roommate and Peter Yu's roommate, Simon Patane.  However, Mr. Horowitz refused to call them as witnesses claiming that he "received emails from them" but that there was "noting useful there".  It should be noted that Mr. Horowitz never produced the "useless" emails to Peter Yu, nor did he mention their existence at the Hearing.

51.    Instead, Mr. Horowitz called as witnesses Ms. Cooley, Ms. Gustafson, and Mr. Hays.  Ms. Cooley testified that she "observed Ms. Walker to be intoxicated" on the evening in question, but that "nothing else caught her attention" that night.  Ms. Gustafson, on the other hand, admitted to having been contacted by Ms. Walker before the investigation began and that Ms. Walker had requested that she provide a written statement to Mr. Horowitz for the file.  Mr. Hays testified

16

about his observations that evening and his conversation with Peter Yu in the hallway where Peter Yu denied any wrongdoing.  At the Hearing, Mr. Horowitz read aloud to the Panel his Final Investigation Notes.

52.   Ms. Walker was present at the Hearing.   In defense of the formal charges brought against him, Peter Yu questioned Ms. Walker with a list of questions he had prepared.  However, the Panel did not allow Peter Yu to exhaust his list of questions, claiming that his questions were "irrelevant".  In response to the questions that were allowed, Ms. Walker would start to cry and was allowed (by the Panel) not to provide any substantive response to Peter Yu's substantive questions about the falsity of her charges and the many inconsistencies in her testimony.  The Panel also denied Peter Yu the right to confront Ms. Walker with the exonerating Facebook email exchange between them, claiming that they, too, were "irrelevant".

53.   At the end of the Hearing, the Panel immediately found Peter Yu guilty of all violations, notwithstanding the lack of any evidence that Peter Yu had raped Ms. Walker.

54.   The next day, on March 8, 2013, the Dean of Students informed Peter Yu via email that he was expelled from Vassar College effective immediately. Shortly thereafter, a public "Notice" was posted outside of the Office of the Dean of

Students to notify the student body that Peter Yu (whose identify was left anonymous on the Notice) was found "responsible for violating Items 5.05 and 20.2" and was expelled from Vassar College immediately.  However, according to Mr. Horowitz's "Investigation Notes" and Peter Yu's first notice of the formal charges being brought against him, Peter Yu was never charged with Section 20.2; *he was charged with the violation of Section 20.1*.  Section 20.1 refers to "non-consensual sexual contact" whereas Section 20.2 refers to "non-consensual sexual intercourse", a more severe offense.  See Student Handbook, p. 144.

55.    In fact, on December 7, 2012, just three (3) months prior to the public "Notice" of the outcome of Peter Yu's Formal Grievance Hearing, a similar public "Notice" was posted outside of the Office of the Dean of Students regarding another student at Vassar College who was found "responsible for violating Items 5.05 and 20.2" and was *suspended* for the Spring 2013 semester, but was not expelled.  It bears noting that while Peter Yu was charged with a less serious offense (Section 20.1) than his peer (Section 20.2), Peter Yu suffered a greater punishment (immediate expulsion) than that of his peer (suspension for 1 semester).

56.    On March 15, 2013, Peter Yu filed his letter of appeal to the Dean of Colleges pursuant to Vassar College Regulations.  Notwithstanding Peter Yu's recitation of the Panel's violations of Vassar College Regulations, the Dean of

18

Colleges rubber-stamped the Panel's May 7, 2013 decision and denied Peter Yu's appeal.

57.   In violation of Vassar College's Formal Grievance Process, the Grievance Hearing Panel was only comprised of faculty members, despite that Peter Yu had the right to (and did so) request that students participate on the Panel. Vassar College also failed to provide a fair and impartial Panel inasmuch as Ms. Walker's father is long-tenured professor at Vassar College in the same department as one of the Panelists.

58.   In violation of Vassar College's Formal Grievance Process, the Equal Opportunity and Affirmative Action Officer failed to review a complainant's Complaint for "appropriateness and timeliness".   Ms. Walker's Complaint comes one (1) full year after the alleged incident without any corroborating record of a police report or evidence of an examination or visit to the Vassar College Health Center.

59.   In violation of Vassar College's Formal Grievance Process, the Equal Opportunity and Affirmative Action Officer failed to provide Peter Yu with a copy of the formal grievance complaint within 5 working days of receipt of the complaint, and failed to properly advise Peter Yu of the college grievance policy and procedures.

60.    In violation of Vassar College's Formal Grievance Process, the Panel failed to appropriately conduct the hearing, by failing to include an "examination of those witnesses and receipt of such documentary evidence as the panel may deem appropriate".  Specifically, Defendant Vassar failed to consider critical evidence of Facebook emails between Peter Yu and Ms. Walker exonerating Peter Yu of the charges; Defendant Vassar failed to interview all key witnesses of the incident, including Peter Yu's roommate who witnessed Ms. Walker's presence in Peter Yu's dorm room; Defendant Vassar failed to illicit corroborating evidence of police reports or health records from Ms. Walker about the incident; and Defendant Vassar failed to allow Peter Yu to fully examine/question Ms. Walker at the hearing. Instead, Vassar College found Peter Yu guilty of all charges without any supporting evidence, except for Ms. Walker's flimsy say-so.

61.    In violation of Vassar College's Formal Grievance Process, Defendant Vassar failed to provide Peter Yu with a written summary prepared by the chair of the Grievance Hearing Panel on the basis of the Panel's judgment within three working days after the deliberations have been completed.

62.    According to Vassar College's Sexual Misconduct Policy,

Any student found responsible for violating the Sexual Misconduct Policy for non-consensual or forced sexual intercourse will likely face a recommended sanction of suspension or expulsion, and **taking into account any concurrent or previous College Regulations violations**.

See Vassar College Regulations, p. 127.

63.     Notwithstanding Peter Yu's unblemished disciplinary record and high academic (3.8 GPA) and athletic achievement (Vassar rowing team) at Vassar College, and the lack of evidence in support of Ms. Walker's claim of rape, Defendant Vassar meted out the highest possible sanction against Peter Yu, namely, immediate expulsion.

64.     Vassar College Regulations provide that "false and malicious accusations of sexual or other harassment, as opposed to complaints which, even if erroneous, are made in good faith, may be the subject of appropriate disciplinary action".  Notwithstanding Peter Yu's insistence that Ms. Walker's accusations were false and and/or malicious, Defendant Vassar failed to abide by its own guidelines and regulations in providing Peter Yu with any redress.

65.     Vassar College has historically and systematically rendered verdicts against males in sexual misconduct cases, solely on the basis of sex.

66.     Male respondents in sexual misconduct cases at Vassar College are discriminated against solely on the basis of sex.  They are invariably found guilty, regardless of the evidence, or lack thereof.

67.     Vassar College Regulations are set up to disproportionately affect the male student population of the Vassar College community as a result of the higher

21

incidence of female complainants of sexual misconduct vs. male complainants of sexual misconduct.

68.    Vassar College Regulations effectuate a failure of due process for the student population, especially the male student population, in their current state because they are set up to encourage and facilitate the reporting of false reports of sexual misconduct and/or other grievances without any recourse for the falsely accused.

## VI.    Peter Yu's Entire Future is Severely Damaged by Defendant Vassar's Actions

69.    As a result of Defendant Vassar's actions, Peter Yu's entire academic career is ruined and, without a college education, his overall economic future is completely compromised.

70.    As a result of Defendant Vassar's actions, Peter Yu's plan to study abroad at London School of Economics has been permanently taken away from him.

71.    As a result of Defendant Vassar's actions, Peter Yu's student visa sponsored by Vassar College has been terminated and his status and his continued presence in the United States is dependent upon his acceptance to another college.

72.     As a result of Defendant Vassar's actions, Peter Yu's parents' financial resources used to provide Peter Yu with a top-quality education in the United States have been obliterated without any compensation or return.

73.     To add insult to injury, after his expulsion in March 2013 (only halfway through the semester), Defendant Vassar insisted that Peter Yu pay the balance of his tuition for the remainder of the semester before Defendant Vassar would provide any transcripts to him in his pursuit of applying to substitute colleges.

74.     Attempting to move on with his future in the face of Vassar College's outrageous decision rendered at the Formal Grievance Hearing, Peter Yu has since applied or attempted to apply to ten (10) colleges to continue his educational career. However, 5 out of the 10 colleges have already denied Peter Yu's acceptance; each college specifically referenced the Formal Grievance Hearing outcome contained in Vassar College's Student Report and Special Dean's Report as the basis for their denial; in fact, one of the colleges now denying Peter Yu's acceptance, had formerly accepted Peter Yu pre-Vassar College.  Furthermore, 2 colleges (other than the above-referenced 10) advised Peter Yu not to even bother applying after Peter Yu referenced the circumstances of his exit from Vassar College.  Peter Yu is still awaiting decisions from 8 other colleges.  However, as a result of the hearing,

23

the likelihood of his acceptance to a college of the same caliber as Vassar College

outcome is bleak.

75.    Without appropriate redress, the unfair outcome of the Formal

Grievance Hearing will continue to cause irreversible damages to Peter Yu, with no

end in sight.  Peter Yu seeks redress from this Court to undo the wrongs occasioned

by Vassar College on his life, future and family.

## AS AND FOR THE FIRST CAUSE OF ACTION
### Violation of Title IX of the Education Amendments of 1972

76.    Peter Yu repeats and realleges each and every allegation hereinabove

as if fully set forth herein.

77.    Title IX of the Education Amendments of 1972 provides, in relevant

part, that:

> No person in the United States shall, on the basis of sex, be excluded
> from participation in, be denied the benefits of, or be subjected to
> discrimination under any education program or activity receiving
> Federal financial assistance.

78.    Title IX of the Education Amendments of 1972 applies to an entire

school or institution if any part of that school receives federal funds; hence, athletic

programs are subject to Title IX of the Education Amendments of 1972, even

though there is very little direct federal funding of school sports.

79.    Upon information and belief, Defendant Vassar receives federal funding in the form of federal grants from numerous federal sources, including, without limitation, Department of Education, Environmental Protection Agency, National Endowment for the Arts, and National Science Foundation.

80.    Based on the foregoing, Defendant Vassar has deprived Peter Yu, on the basis of his sex, of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Defendant Vassar's guidelines and regulations.

81.    Based on the foregoing, Defendant Vassar conducted the "investigation" and subsequent Hearing in a manner that was biased against the male being accused.  From the outset, Mr. Horowitz's Final Investigation Notes were slanted in favor of Ms. Walker and took her statements at face-value.  Absent from Mr. Horowitz's report is the mention of (or explanation for its absence) any police report or health examination/rape kit made in connection with the alleged incident.  At the Hearing, Defendant Vassar freely allowed Ms. Walker to escape critical questioning by crying on the witness stand, and blithely ignored Peter Yu's introduction of exonerating evidence of Facebook emails.

82.    Based on the foregoing, Defendant Vassar imposed sanctions on Peter Yu that were disproportionate to the severity of the charges levied against him and

25

without any consideration of his unblemished disciplinary record at Vassar College, and without providing any written summary for the basis therefor.

83.     Based on the foregoing, Defendant Vassar's guidelines and regulations are set up to disproportionately affect the male student population of the Vassar College community as a result of the higher incidence of female complainants of sexual misconduct against male complainants of sexual misconduct.

84.     Based on the foregoing, male respondents in sexual misconduct cases at Vassar College are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof.

85.     As a result of the foregoing, Peter Yu is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SECOND CAUSE OF ACTION
### Breach of Contract

86.     Peter Yu repeats and realleges each and every allegation hereinabove as if fully set forth herein.

87.     Based on the aforementioned facts and circumstances, Defendant Vassar breached express and/or implied agreement(s) with Peter Yu.

88.     As a direct and foreseeable consequence of these breaches, Peter Yu sustained tremendous damages, including, without limitation, emotional distress,

loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

89.    Peter Yu is entitled to recover damages for Defendant Vassar's breach of the express and/or implied contractual obligations described above.

90.    As a direct and proximate result of the above conduct, actions and inactions, Peter Yu has suffered physical, emotional and reputational damages, economic injuries and the loss of educational and athletic opportunities.

91.    As a result of the foregoing, Peter Yu is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE THIRD CAUSE OF ACTION
### Covenant of Good Faith and Fair Dealing

92.    Peter Yu repeats and realleges each and every allegation hereinabove as if fully set forth herein.

93.    Based on the aforementioned facts and circumstances, Defendant Vassar breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Peter Yu by meting out the highest possible sanction of expulsion against Peter Yu, notwithstanding the lack of evidence in support of Ms. Walker's claim of rape, other than Ms. Walker's flimsy say-so.

94.     As a direct and foreseeable consequence of these breaches, Peter Yu sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

95.     Peter Yu is entitled to recover damages for Defendant Vassar's breach of the express and/or implied contractual obligations described above.

96.     As a result of the foregoing, Peter Yu is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### Unfair or Deceptive Trade Practices

97.     Peter Yu repeats and realleges each and every allegation hereinabove as if fully set forth herein.

98.     Section 349(a) of the General Business Law provides consumer protection by declaring as unlawful "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state".

99.     According to Vassar College's Internet website:

The mission of Vassar College is to make accessible "the means of a thorough, well-proportioned and liberal education" that **inspires each individual to lead a purposeful life**. The college makes possible an education that **promotes analytical, informed, and independent thinking and sound judgment; encourages articulate expression;**

28

and **nurtures intellectual curiosity**, creativity, **respectful debate and engaged citizenship**. Founded in 1861 to provide women an education equal to that once available only to men, the college is now open to all. **Vassar supports a high standard** of engagement in teaching and learning, scholarship and artistic endeavor; a broad and deep curriculum; a community diverse in background and experience; **and a residential campus that fosters a learning community**.

100.   Defendant Vassar has engaged in the following acts or practices that are deceptive or misleading in a material way, or committed deceptive acts or practices, which were aimed at the consumer public at large, that were a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances:

a.   by causing Peter Yu to believe that Defendant Vassar would follow the "Vassar College Regulations" and "Student Handbook", copies of which were provided to Peter Yu and are also available on Defendant Vassar's Internet website; and

b.   by causing Peter Yu to believe that if he paid tuition and fees to Defendant Vassar, that Defendants would uphold its obligations, covenants and warranties to Peter Yu described in the "Vassar College Regulations" and "Student Handbook".

29

101.   Based on the foregoing facts and circumstances, Defendant Vassar engaged in unfair or deceptive trade practices in violation of Section 349(a) of the General Business Law.

102.   As a result of Defendants' deceptive acts and practices, Peter Yu sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

103.   As a result of the foregoing, Peter Yu is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### Estoppel and Reliance

104.   Peter Yu repeats and realleges each and every allegation hereinabove as if fully set forth herein.

105.   Defendant Vassar's regulations and other standards, procedures and policies and principles constitute representations and promises that Defendant Vassar should have reasonably expected to induce action or forbearance by Peter Yu.

106.   Defendant Vassar expected or should have expected Peter Yu to accept its offer of admission, incur tuition and fees expenses, and choose not to attend

30

other colleges based on its express and implied promises that Defendant Vassar would not tolerate, and Peter Yu would not suffer, harassment by fellow students and would not deny Peter Yu his procedural rights should he be accused of a violation of "Vassar College Regulations" or the "Student Handbook".

107.   Peter Yu relied to his detriment on these express and implied promises and representations made by Defendant Vassar.

108.   Based on the foregoing, Defendant Vassar is liable to Peter Yu based on Estoppel.

109.   As a direct and proximate result of the above conduct, Peter Yu sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

110.   As a result of the foregoing, Peter Yu is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

111.   Peter Yu repeats and realleges each and every allegation hereinabove as if fully set forth herein.

31

112. Based on the foregoing facts and circumstances, Defendant intentionally and/or with willful or wanton indifference to the truth, engaged in conduct to remove Peter Yu from Vassar College without regard to the truth of the allegations being made by Ms. Walker and without evidence in support of Ms. Walker's belated claims, and otherwise intentionally inflicted emotional distress upon Peter Yu.

113. Defendant Vassar resorted to extortion tactics to require Peter Yu to pay additional tuition for the balance of the semester, despite Peter Yu's expulsion, before providing him with his academic transcripts to apply to other colleges.

114. The above actions and inactions by Defendant Vassar were so outrageous and utterly intolerable that they caused mental anguish and severe emotional distress to Peter Yu, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

115. As a direct and proximate result of the above conduct, Peter Yu sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

116.   As a result of the foregoing, Peter Yu is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
### Negligence

117.   Peter Yu repeats and realleges each and every allegation hereinabove as if fully set forth herein.

118.   Defendant Vassar owed duties of care to Peter Yu.   Such duties included, without limitation, a duty of reasonable care in the conduct and investigation of the allegations of rape and sexual misconduct against him.

119.   Defendant Vassar breached its duties owed to Peter Yu.

120.   As a direct and proximate result of the above conduct, Peter Yu sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

121.   As a result of the foregoing, Peter Yu is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
### Declaratory Judgment

122.   Peter Yu repeats and realleges each and every allegation hereinabove as if fully set forth herein.

123.   Defendant Vassar has committed numerous violations of the Parties' contracts and of federal and state law.

124.   Peter Yu's education and future career has been severely damaged. Without appropriate redress, the unfair outcome of the Formal Grievance Hearing will continue to cause irreversible damages to Peter Yu, with no end in sight.

125.   As a result of the foregoing, there exists a justiciable controversy between the Parties with respect to the outcome, permanency, and future handling of Peter Yu's formal student record at Vassar College.

126.   By reason of the foregoing, Peter Yu requests, pursuant to 28 U.S.C. § 2201, a declaration that: (i) the outcome and findings made by Vassar College at Peter Yu's Formal Grievance Hearing be reversed; (ii) Peter Yu's reputation be restored; (iii) Peter Yu's disciplinary record be expunged; (iv) the record of Peter Yu's expulsion from Vassar College be removed; (v) any record of Peter Yu's Formal Grievance Hearing be permanently destroyed; and (vi) Vassar College's rules, regulations and guidelines are unconstitutional as applied.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Peter Yu demands judgment

against Defendant Vassar as follows:

(i)   on the first cause of action for violation of Title IX of the Education Amendments of 1972, a judgment awarding Peter Yu damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii)   on the second cause of action for breach of contract, a judgment awarding Peter Yu damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii)   on the third cause of action for breach of the covenant of good faith and fair dealing, a judgment awarding Peter Yu damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iv)   on the fourth cause of action under Section 349(a) of the General Business Law, a judgment awarding Peter Yu damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic

35

opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(v)     on the fifth cause of action for estoppel and reliance, a judgment awarding Peter Yu damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vi)    on the sixth cause of action for intentional infliction of emotional distress, a judgment awarding Peter Yu damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(vii)   on the seventh cause of action for negligence, a judgment awarding Peter Yu damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(viii)  on the eighth cause of action for a declaratory judgment pursuant to 28 U.S.C. § 2201, a judicial declaration that: (i) the outcome and findings made by Vassar College at Peter Yu's Formal Grievance Hearing be reversed; (ii) Peter Yu's reputation be restored; (iii) Peter Yu's disciplinary record be expunged; (iv) the record of Peter Yu's expulsion from Vassar College be removed; (v) any record of Peter Yu's Formal Grievance Hearing be permanently destroyed; (vi) and (vi) Vassar College's rules, regulations and guidelines are unconstitutional as applied; and

36

(ix)   awarding Peter Yu such other and further relief as the Court deems just and proper.

**Dated: New York, New York**
**June 20, 2013**

NESENOFF & MILTENBERG, LLP

By:_____

Andrew T. Miltenberg, Esq. (AM 7006)
Philip A. Byler, Esq. (PB 1234)
Kimberly C. Lau, Esq. (KL 9374)
**Attorneys for Plaintiff**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
amiltenberg@nmllplaw.com
philb@optonline.net
klau@nmllplaw.com

## JURY DEMAND

Peter Yu herein demands a trial by jury of all triable issues in the present matter.

Dated: New York, New York
       June 20, 2013

NESENOFF & MILTENBERG, LLP

By: _____
Andrew T. Miltenberg, Esq. (AM 7006)
Philip A. Byler, Esq. (PB 1234)
Kimberly C. Lau, Esq. (KL 9374)
**Attorneys for Plaintiff**
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
philb@optonline.net
klau@nmllplaw.com

38