UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAOLU "PETER" YU,

                                          Plaintiff,

                    - against -

VASSAR COLLEGE,

                                          Defendant.

CASE NO. 13-cv-04373 (HB)
(MHD)

### DEFENDANT VASSAR COLLEGE'S REPLY TO PLAINTIFF PETER YU'S COUNTER-STATEMENT PURSUANT TO S.D.N.Y. LOCAL RULE 56.1 AND STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1, Defendant Vassar College ("Vassar") submits this Reply in further support of its Statement of Undisputed Facts (the "56.1 Statement") and in reply to Plaintiff Peter Yu's ("Yu") Counter-Statement Pursuant to S.D.N.Y. Local Rule 56.1 (the "Response").

### VASSAR'S GENERAL OBJECTIONS TO YU'S RESPONSE

1.      Yu's Response was untimely. It was due to be served with his Opposition to Vassar's Motion for Summary Judgment on May 16, 2014. It was not served on Vassar until May 19, 2014 and not filed electronically until May 20, 2014. The Court should deem Vassar's 56.1 Statement admitted in its entirety because of Yu's failure to timely file his Response.

2.      To the extent Yu objects or denies facts a paragraph in Vassar's 56.1 Statement, but does not set forth specific facts showing there is a genuine issue for trial, the Court should deem that paragraph admitted in its entirety. Local Rule 56.1(b)-(d); *see also Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008) (A party opposing summary judgment "must set forth specific

facts showing that there is a genuine issue for trial."); *Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006).

3.    To the extent Yu admits to the facts in a paragraph but avers that the facts are incomplete or imprecise, Yu has failed to set forth specific facts showing there is a genuine issue for trial and the Court should deem those paragraphs admitted in their entirety. *See Rubens*, 527 F.3d at 254.

4.    Vassar sets forth below its Replies to those of Yu's Responses that Vassar believes merit a response. Vassar's lack of Reply to any particular Yu Response is neither a concession of the truth of Yu's statements within that Response nor a concession that Yu's Response raises a genuine dispute of material fact.

## <u>RESPONSES AND SPECIFIC OBJECTIONS</u>

1.    Vassar is a residential liberal arts college located in Poughkeepsie, New York. (Compl. ¶ 5; Answer ¶ 5.)

> <u>**Response**</u>:    Admit

2.    Plaintiff Xiaolu "Peter" Yu ("Yu") was a student at Vassar prior to being expelled in March 2013. (Compl. ¶¶ 4, 54.)

> <u>**Response**</u>:    Admit but incomplete.
>
> 2a. Based on Peter Yu's excellent high school record (Yu Decl. ¶¶ 41-42), he believed he had a bright future ahead of him and was accepted at NYU, Wesleyan, Bates, Carnegie Mellon, Northeastern and Vassar. Peter chose Vassar and paid over $120,000 for the 2012/2013 academic year, which included the costs of tuition, room and board, activities fee, health insurance fee and school supplies. (Yu Decl. ¶¶ 41-44.) Peter Yu was a student at Vassar until his expulsion in March 2013 when he was a sophomore. (Yu Decl. ¶ 2, 46.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 2. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 2 should be deemed admitted in its entirety.

3.      A Chinese citizen, Yu has resided in the United States since 2008, when he enrolled in boarding school in Connecticut. (Compl. ¶¶ 10, 12; Deposition of Xiaolu "Peter" Yu, March 21, 2014 ["Yu Dep."], 11:10-24, 133:13-134:17, excerpts from the transcript of which are attached as Exhibit A to the Declaration of Alexander W. Bogdan, sworn to May 1, 2014 ["Bogdan Decl."].)

> **Response:**      Admit but incomplete.
>
> 3a. Prior to enrolling in Vassar College, Peter Yu was a successful high school honors student and student athlete at a prestigious high school academy in Connecticut. At the time, he had a 4.19/4.33 grade point average, possessed numerous accolades, both scholastic and athletic, and scored in the 98% percentile in the SAT standardized college entrance examination. (Yu Decl. ¶ 41.)

> **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 3. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 3 should be deemed admitted in its entirety.

4.      Yu currently resides in Lake Grove, Long Island and has the use of a house his family purchased for him in Kings Park, Long Island. (Yu Dep. 6:24-7:6, 166:16-167:14.)

> **Response:**      Admit.

5.      Yu has not decided whether to return to China after he completes his education. (*Id.* at 143:8-144:3.)

> **Response:**      Admit.

6.      On February 18, 2013, the one-year anniversary of the incident, Complainant reported to a member of Vassar's Sexual Assault Response Team that she had been sexually

assaulted by Yu one year prior when she was so intoxicated as to be incapable of consent.

(Affidavit of David Brown, sworn to April 28, 2014 ["Brown Aff."] Ex. A.)

**Response:** Deny.

6a. The facts of the case begin with the night of February 18, 2012, when the Vassar College crew team held a party where Peter Yu was to meet Sara Cooley (Student A) who he had been dating, but instead talked with MCW and consumed alcoholic beverages with her. The two left the party and went to "The Mug," a place frequented by Vassar students, where the two talked, drank more, kissed, kept on kissing and agreed to have sex; and to do so, after finding out that MCW's dorm room was not available, they went to Peter Yu's dorm room. There, the older MCW, who was not a sexual virgin and who had been in an intimate relationship that had recently broken up, took off her own clothes off in order to have sex with the younger Peter, who prior to that night had been a sexual virgin. Consensual sexual intercourse ensued. It is undisputed that afterward, MCW left Peter's dorm room and did not seek medical attention and did not file a police report. Instead, on February 19, 2012, MCW and Peter Yu exchanged Facebook messages in which MCW apologized for leading Peter on and saying "I [MCW] had a wonderful time last night. . . ." MCW and Peter also discussed the apparent fact that Security was called on Peter because, wrote Peter, some students "thought I [Peter] might be potentially hurting somebody," to which MCW wrote back "I [MCW] will stand up for you [Peter] because you [Peter] were not." Peter Yu wrote that Security being called was "just his student dorm fellow "overreacting." (Yu Decl. ¶¶ 2-15 & Ex. Yu Ex. A.) Two other female members of the Vassar crew team did go to Peter's dorm room. One of the girls had in the past a relationship with Peter Yu (Yu Decl. ¶ 3) and had a motive to interrupt MCW from starting a relationship with Peter.

6b. MCW and Peter Yu continued to exchange Facebook messages for the next nine months. On March 20, 2012, MCW wrote to Peter apologizing "for that night," that it "was very irresponsible of me [MCW] to get drunk and do that with you [Peter]," that "I [MCW] did not treat you [Peter] very well, and it was disrespectful on my [MCW's] part to do what I [MCW] did because I [MCW] was drunk." Peter replied with "thanks for the concern" but assured her that he was OK and asked why the message. MCW responded that she felt guilty "and hadn't said I was sorry. . . ." Messages were exchanged in May and October 2012 about crew team needs and exams. (Yu Decl. ¶ 15 & Ex. A.) The next year, in early 2013, MCW consulted with Elizabeth Shrock, a Title IX

4

advisor, about what had happened on the night of February 18, 2012 with Peter Yu. (Shrock Dep. Exs 2-5, 8-10.)

6c. On February 18, 2013, one year after Peter Yu and MCW had sex, MCW filed a statement with Vassar's "Sexual Assault Team." (Brown Aff. Ex. A.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 6. *See* Vassar's General Objection No. 2. Yu avers that the Complainant contacted a member of Vassar's Sexual Assault Response Team on February 18, 2013, and fails to set forth any specific facts to dispute that she reported that she was sexually assaulted by Yu one year prior when she was so intoxicated as to be incapable of consent. Accordingly, Paragraph 6 should be deemed admitted in its entirety.

7.    Vassar immediately began an investigation, led by its Title IX investigator Richard Horowitz, with the assistance of Vassar's Associate Director of Security Kim Squillace. (Affidavit of Richard Horowitz, sworn to April 29, 2014 ["Horowitz Aff."], Ex. B.)

**Response:**    Admit but incomplete.

7a. On February 18, 2013, an investigation was begun by Vassar's Title IX investigator Richard Horowitz and Vassar's Associate Director of Security Kim Squillance. (Horowitz Aff. Ex. B.) Richard Horowitz had been Vassar College's Title IX investigator for nine months; he could not remember any training he received. (Horowitz Dep. 7:11-25, 36:20-37:8) On February 19, 2013, Peter Yu was told, out of the blue without explanation, that he was banned from the college crew team. (Yu Decl. ¶ 17.)

7b. The Horowitz investigation involved interviews with MCW, Peter Yu and three other students. Peter Yu told Horowitz MCW and he (Yu) had consensual sex and supplied the Facebook messages that Horowitz recognized undermined MCW's statement; but no attempt was made to assess the credibility of witnesses or investigate into biases or relationships. (Horowitz Dep. 230:2-231:23, 251:22-252:5, 274:25-276:16; Yu Decl. ¶ 18 & Ex. A.) Horowitz relied on the student witnesses for an assessment of MCW's intoxication, but did not investigate the competency of Sara Cooley to make an assessment of MCW's intoxication or the Student Fellow's competency to make an assessment of Peter's

5

supposed lack of intoxication. (Horowitz 180:11-21, 236:5-15.) Horowitz never makes a focus of an investigation the intoxication of a male student. (Horowitz Dep. 258:10-15.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 7. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 7 should be deemed admitted in its entirety.

8.      After speaking with and receiving statements and evidence from Yu, Complainant, and students who witnessed Yu and Complainant on the night of the incident, Mr. Horowitz informed Dean of Students David Brown on February 26, 2013 that Yu may have violated Section 5.05 and Section 20.2 of Vassar's College Regulations, which address non-consensual sexual conduct. (Horowitz Aff. Ex. E.)

**Response:**      Deny.

8a. Eight days after the investigation began, on February 26, 2013, Horowitz reported to the Dean of Students David Brown that based on statements by MCW and other students, Peter Yu may have committed sexual misconduct in violation of Section 5.05 and Section 20.2 of Vassar's College Regulations. (Horowitz Aff. Ex. E.)

8b. Paragraph 7b above is incorporated herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 8. *See* Vassar's General Objection No. 2. Yu avers that on February 26, 2013, Mr. Horowitz reported to Dean of Students David Brown that Yu may have violated Sections 5.05 and 20.2 of Vassar's College Regulations. Yu does not set forth any specific facts that dispute that he did so after speaking with and receiving statements and evidence from Yu, Complainant, and students who witnessed Yu and Complainant on the night of the incident or that Section 5.05 and Section 20.2 of Vassar's College Regulations address non-consensual sexual conduct. Accordingly, Paragraph 8 should be deemed admitted in its entirety.

6

9.      Mr. Horowitz subsequently drafted a written summary of his investigation.

(Horowitz Aff. Ex. F.)

> **Response:**      Deny.
>
> 9a. Horowitz, after informing Dean Brown on February 26, 2013, prepared a summary of his "investigation."  Horowitz did not include the point in his report that MCW's Facebook messages undermined MCW's statement, but instead treated the evening as a matter of MCW being drunk, Peter Yu taking advantage of MCW and some other students being concerned about MCW.  (Horowitz Aff. Ex. F.)
>
> **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 9.  *See* Vassar's General Objection No. 2.  Accordingly, Paragraph 9 should

be deemed admitted in its entirety.

10.      Section 5.05 of Vassar's College Regulations addresses sexual misconduct and

provides as follows:

> **5.05 Sexual Misconduct** offenses include, but are not limited to, non-consensual sexual contact (or attempts to commit same), non-consensual sexual intercourse (or attempts to commit same), and sexual exploitation.
> . . .
> •      Non-consensual sexual intercourse is any sexual intercourse, however slight, or with any object, by a person upon a person, that is without consent and/or by force.
> (Brown Aff. Ex. E at VAS 00000153.)
>
> **Response:**      Admit.

11.      Section 20.2 addresses the sexual offense of non-consensual sexual intercourse

and provides as follows: "Non-consensual sexual intercourse is any intentional sexual touching,

however slight, with any object, by a person upon a person, that is without consent and/or by

force."  (*Id.* at VAS 00000159.)

> **Response:**      Admit.

12. According to Vassar's regulations, "[c]onsent cannot be gained by force, coercion, by ignoring or acting without regard to the objections of another, or by taking advantage of the incapacitation of another, where the accused knows or should have reasonably known of such incapacitation." (*Id.*at VAS 00000140.)

> **Response:**    Admit but incomplete.
>
> 12a. In another part of Vassar's College Regulations that would not be cited in Dean Brown's letter charging Peter Yu under Sections 5.05 and 20.2 of Vassar's College Regulations, it is stated. "Consent cannot be gained by force, coercion, by ignoring or acting without regard to the objections of another, or by taking advantage of the incapacitation of another, where the accused knows or should have reasonably known of such incapacitation." (Brown Aff. Ex. E at VAS 00000140; Bogl. (sic) Decl. Ex. C at 00016, 00019.)
>
> **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 12. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 12 should be deemed admitted in its entirety.

13. On February 27, 2013, one day after the conclusion of Mr. Horowitz's investigation, Dean Brown informed Yu in writing that a hearing would be held on March 7, 2013 before Vassar's Interpersonal Violence Panel to determine if Yu had violated Section 5.05 and 20.2. (Yu Dep. 171:21-172:13; Bogdan Decl. Ex. C at 00016.)

> **Response:**    Admit.

14. Dean Brown enclosed with his letter to Yu copies of Section 5.05 and 20.2 and a copy of the hearing rules and procedures. (Bogdan Decl. Ex. C.)

> **Response:**    Admit but incomplete.
>
> 14a. Peter Yu was shocked by the false charge of sexual misconduct, and no one ever explained the rights that Peter Yu had. (Yu Decl. ¶¶ 19-20.)

14b. The hearing date set, March 7, 2013, was nine days away and in the middle of midterm exams. Peter Yu's request for an adjournment was denied; in contrast, MCW's request for adjournment of her taking midterm exams was granted. (Yu Decl. ¶¶ 25-26.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 14. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 14 should be deemed admitted in its entirety.

15.    Vassar's Interpersonal Violence Panel is charged with holding hearings to determine whether students have violated Vassar's sexual misconduct, harassment, or interpersonal violence regulations. (*Id.* at 00019)

**Response:**    Admit.

16.    For violations of Section 5.05, a student may be subject to sanctions ranging from probation to expulsion; for violations of Section 20.2, a student may be subject to sanctions ranging from suspension to expulsion. (Brown Aff. Ex. B.)

**Response:**    Admit but incomplete.

16a. The Vassar Student Conduct Sanctioning Parameters state that for violations of Section 5.05 of Vassar's College Regulations, the sanction may range from probation to expulsion and that for violations of Section 20.2 of Vassar's College Regulations, sanction may range from suspension to expulsion. (Yu Decl. ¶ 37 & Ex. K; Brown Aff. Ex B.) The Interpersonal Violence Panel Rules and Procedures state that character statements and impact statements will be taken into consideration when the panel considers the severity of the sanctions; and the Vassar College Regulations 2012/2013 consider the "precedents in similar cases" and "student's disciplinary record." (Yu Decl. ¶ 37 & Exs. L, M p. 135.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 16. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 16 should be deemed admitted in its entirety.

17.    After being informed of the hearing date, Yu provided the names of two witnesses who had not been previously contacted by investigators—his roommate and Complainant's former roommate.  (Horowitz Aff. Ex. G.)

   **Response:**    Admit.

18.    Mr. Horowitz invited both to attend the hearing.  (Horowitz Aff. Exs. H-J.)

   **Response:**    Deny.

   18a. Peter Yu provided to Horowitz names of two witnesses who had not been previously contacted by investigators: the roommates of Peter Yu and MCW; however, they were not called as witnesses and Horowitz was reluctant to contact them.  (Yu Decl. ¶ 23 & Ex. D.)

   18b. Yu's roommate Simon Patane has testified in deposition that Horowitz made no real effort to get Patane's appearance at the hearing and argued with Patane that Peter Yu was not drunk. (Patane Dep. 20:11-21:7, 32:21-33:13.)

   **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 18.  *See* Vassar's General Objection No. 2.  There is no support in the cited deposition testimony for the proposition that Mr. Horowitz "made no real effort to get [Yu's roommate's] appearance at the hearing and argued with [Yu's roommate] that Peter Yu was not drunk."  Accordingly, Paragraph 18 should be deemed admitted in its entirety.

19.    When neither was available to attend, Mr. Horowitz invited them to provide written statements.  (Horowitz Aff. Exs. H-J.)

   **Response:**    Deny.

   19a. Paragraphs 18a and 18b above are incorporated herein.

   **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 19.  *See* Vassar's General Objection No. 2.  Accordingly, Paragraph 19 should be deemed admitted in its entirety.

10

20.     Yu's former roommate informed Mr. Horowitz by email that he had entered their room on the evening in question and Yu immediately asked him to leave.  (Horowitz Aff. Ex. I.)

**Response:**     Admit.

21.     As to Complainant's roommate, Yu had wanted her to testify about whether she had missed a call from Complainant on the night in question, but, as she told Mr. Horowitz via email, she had no recollection of a missed phone call from a year prior nor did she have the same phone so as to be able to check her call records.  (Horowitz Aff. Ex. J.)

**Response:**     Deny.

21a. Paragraphs 18a and 18b above are incorporated herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 21.  *See* Vassar's General Objection No. 2.  Accordingly, Paragraph 21 should be deemed admitted in its entirety.

22.     In the days leading up to the hearing, Yu met, spoke, and exchanged emails with Mr. Horowitz and Dean Brown to discuss the hearing procedures and address any questions Yu had.  (Horowitz Aff. Exs. K, L; Brown Aff. Ex. C; Yu Dep. 171:3-172:13.)

**Response:**     Deny.

22a. Paragraph 14a above is incorporated herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 22.  *See* Vassar's General Objection No. 2.  Accordingly, Paragraph 22 should be deemed admitted in its entirety.

23.     Three days prior to the hearing, in compliance with Vassar's regulations, Yu reviewed the hearing file, including the letter notifying him of the charges against him, Mr. Horowitz' investigation report, Complainant's statements to the investigators, witness

statements, Yu's own written statement, the Facebook messages Yu submitted to investigators, the names of the witnesses who would testify at the hearing, and the names of the panel members.  (Declaration of Xiaolu "Peter" Yu in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, sworn to February 11, 2014 ["Yu Decl."], ¶¶ 8-9, a copy of which is attached as Exhibit D to the Bogdan Decl.; Yu Dep. 80:8-22.)

> **Response**:    Admit but imprecise and incomplete.
>
> 23a. On March 4, 2013, only three days before the scheduled hearing, Peter Yu was given access to the investigation file for the very first time; the investigation file contained Dean Brown's letter to Yu notifying him of the charge, the Horowitz investigation report, witness statements, Peter Yu's statement, the Facebook messages, the names of the witnesses who would be called at the hearing and the names of the panel members.  (Yu Decl. ¶¶ 24-25; Yu Dep. 80:8-22; Yu P.I. Decl. ¶¶ 8-9.)
>
> **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 23.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 23 should be deemed admitted in its entirety.

24.     The hearing was held on March 7, 2013.  (Affidavit of Christopher Roellke, sworn to April 28, 2014, ["Roellke Aff."] Ex. A.)

> **Response**:    Admit but incomplete.
>
> 24a. On March 7, 2013, the hearing was held only eight days after Peter Yu was first told of the sexual misconduct charge.  (Roellke Aff. ¶ 6; Yu Decl. ¶¶ 19, 28.)
>
> **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 24.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 24 should be deemed admitted in its entirety.

25.     Luis Inoa, Assistant Dean of Residential Life, served as the non-voting chair of the hearing panel.  (Affidavit of Luis Inoa, sworn to April 29, 2014 ["Inoa Aff."] ¶ 2.)

**Response:** Admit.

26. In compliance with Vassar's regulations, the three voting panel members were all faculty members, as requested by Complainant. (Bogdan Decl. Ex. C at 00023; Horowitz Aff. Ex. E; Affidavit of Jamie Kelly, sworn to April 29, 2014 ["Kelly Aff."] ¶ 2; Affidavit of Jane Parker, sworn to April 30, 2014 ["Parker Aff."] ¶ 2.)

> **Response:** Deny.

> 26a. The hearing panel consisted of a non-voting chair and three voting panel members, all four of whom were faculty members. Luis Inoa, an Assistant Dean, was the non-voting chair. The voting panel members were: Jane Parker, a Physical Education Lecturer, Sophia Harvey, Associate Professor of Film; and Jamie Kelly, an Assistant Professor of Philosophy. (Iona Aff. ¶ 2; Parker Aff. ¶ 2; Kelly Aff. ¶ 2; Yu Decl. ¶ 28.) Peter Yu had requested that there be a student member of the hearing panel, but MCW's request for an all faculty member panel was honored despite the well-known fact that MCW's father was a Vassar College faculty member. No conflict of interest check was apparently run as to the faculty panel members. (Yu Decl. ¶ 21; Harvey Dep. 38:9-14; Horowitz Dep. 235:4-14.)

> **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 26. *See* Vassar's General Objection No. 2. Yu avers that the three voting panels were all faculty members and that Complainant requested that the panel be comprised solely of faculty members. Yu does not set forth any specific facts that dispute that an all-faculty panel is in compliance with Vassar's regulations upon the request of a complainant. Accordingly, Paragraph 26 should be deemed admitted in its entirety.

27. The panelists received the training required by Vassar to serve on the panel. (Inoa Aff. ¶ 2; Kelly Aff. ¶ 2; Parker Aff. ¶ 2.)

> **Response:** Deny.

> 27a. While the panel members supposedly received training to serve on Vassar's "Interpersonal Violence Panel," in fact there was minimal actual training, and when deposed, the panel members

13

could remember little that was learned in training sessions. It was recalled that the training did not allow the panel members to consider the intoxication of the male student as rendering him incapable of consent, did not include asking about whether a complainant sought medical assistance and filed a police report after an incident. (Parker Dep. 56:15-57:19, 93:9-16, 93:19-21; Harvey Dep. 123:19-124:14, 127:16-128:11; Yu Decl. ¶ 33.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 27. *See* Vassar's General Objection No. 2. Accordingly, Paragraph 27 should be deemed admitted in its entirety.

28. Yu, Complainant, Mr. Horowitz, and three student witnesses testified at the hearing. (Yu Dep. 64:24-65:17; Inoa Aff. ¶ 3; Kelly Aff. ¶ 3; *see generally* Roellke Aff. Ex. A.)

**Response:** Deny.

28a. None of the live witnesses "testified" in the common sense of the word meaning sworn testimony under oath. The live witnesses gave unsworn accounts. The live witnesses were: MCW; Peter Yu; Title IX investigator Richard Horowitz; female student A (Sara Cooley); female student B (Carolina Guftason); and a student dorm resident fellow (Zachary Hays). (Yu Dep. 170:12-18; Yu Decl. ¶ 29.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 28. *See* Vassar's General Objection No. 2. Yu avers that Yu, Complainant, Mr. Horowitz, and three students were live witnesses at the hearing. Yu cites to no authority to support the proposition that "[n]one of the live witnesses 'testified' in the common sense of the word meaning sworn testimony under oath." Accordingly, Paragraph 28 should be deemed admitted in its entirety.

29. Mr. Horowitz's investigation report was submitted to and considered by the panel. (Horowitz Aff. Ex. F; Inoa Aff. ¶ 5; Kelly Aff. ¶ 5; Parker Aff. ¶ 5.)

**Response:** Admit.

30. Yu questioned all witnesses at the hearing, including Complainant and Mr. Horowitz. (Yu Dep. 110:17-22; Bogdan Decl. Ex. C at 00028; Inoa Aff. ¶ 4; Kelly Aff. ¶ 4; Parker Aff. ¶ 4; *see generally* Roellke Aff. Ex. A.)

> **Response:** Deny.
>
> 30a. Peter Yu did not ask questions directly to MCW, but rather was required to submit his questions to the Panel Chair Luis Inoa, who would ask questions but did not ask many of Peter Yu's questions and who allowed MCW to be non-responsive. Also, Panel Chair Inoa interrupted or otherwise did not allow Peter Yu's questions to Horowitz. Peter Yu did not have effective cross-examination. (Yu Decl. ¶ 30.)
>
> **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 30. *See* Vassar's General Objection No. 2. Yu avers that he asked questions to the Complainant. Yu's Response does not set forth any specific facts to dispute that he questioned all witnesses at the hearing, including Complainant and Mr. Horowitz. Yu cites to no evidence in the record that supports the statements that "Peter Yu did not ask questions directly to MCW, but rather was required to submit his questions to the Panel Chair Luis Inoa, who would ask questions but did not ask many of Peter Yu's questions and who allowed MCW to be non-responsive. Also, Panel Chair Inoa interrupted or otherwise did not allow Peter Yu's questions to Horowitz. Peter Yu did not have effective cross-examination." Yu Decl. ¶ 30 does not support these statements. Accordingly, Paragraph 30 should be deemed admitted in its entirety.

31. Complainant testified at the hearing and reported in her statements to Vassar's investigators that were submitted to the hearing panel and summarized in the investigator's report, that Yu had sexual intercourse with her when she was highly intoxicated and unable to consent. (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at VAS 00001314-18.)

> **Response:** Deny.

31a. MCW's unsworn account, which was entirely inconsistent with her Facebook messages to Peter and with her not filing a police report and not seeking medical attention, was: that on February 18, 2012, MCW and Peter Yu attended a party where she became increasingly intoxicated; that she could not remember details because of her intoxication; but that she did remember rebuffing Peter's attempts to kiss her but then ending up (by magic?) in Peter Yu's dorm room where Yu removed MCW's clothes, used physical force to force her to perform oral sex on him and then had sexual intercourse with her despite her attempts to push him away, after which MCW put on her clothes and left. (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at 00001314; Yu Decl. ¶ 33 & Ex. A.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 31. *See* Vassar's General Objection No. 2. Yu avers that the Complainant recalled rebuffing Yu's attempts to kiss her, that he used physical force to force her to perform oral sex on him, and then had sexual intercourse with her despite her attempts to push him away. Yu does not set forth any specific facts to dispute that Complainant reported this at the hearing and to investigators and that she reported she was highly intoxicated and unable to consent. Accordingly, Paragraph 31 should be deemed admitted in its entirety.

32.     Complainant and Yu attended a team party at which Complainant became increasingly intoxicated. (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at VAS 00001315, 1326.)

**Response:**     Deny.

32a. Peter Yu's account, which is sworn to in this action, was: that on February 18, 2012, MCW and Peter met at the crew team party where there was drinking, where MCW made two drinks for Peter and where Peter learned that MCW had broken up with her boyfriend; that MCW and Peter left that party and went together to "The Mug," a leading night time venue frequented by Vassar students; that during the walk over to The Mug, MCW placed her arm around Peter Yu's shoulders as a sign of intimacy, not for support which Peter did not perceive her as needing; that at the Mugs [sic], Peter Yu and MCW kissed and as the night continued

16

on, Peter Yu and MCW continued to kiss and then decided to have sex.  (Yu Decl. ¶¶ 2-5, 14.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 32.  *See* Vassar's General Objection No. 2.  Yu avers that he and Complainant attended a team party.  He does not set forth any specific facts to dispute that Complainant became increasingly intoxicated.  According, Paragraph 32 should be deemed admitted in its entirety.

33.  Complainant could not recall all of the details of the evening because of her level of intoxication.  (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at VAS 00001314-17.)

**Response:**  Deny.

33a. MCW's unsworn account was not based on recollection or a failure of recollection, as it [sic] in conflict with the contemporaneous Facebook messages, the failure to file police report, the failure to seek medical assistance and the Facebook messages that continued for nine months between Peter Yu and MCW and it followed "counselling" [sic] in early 2013.  (Yu Decl. ¶¶ 2-15, 33 & Ex. A.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 33.  *See* Vassar's General Objections 2 and 3.  Yu identifies no facts to dispute that Complainant could not recall all of the details of the evening and that she could not so recall because of her level of intoxication.  According, Paragraph 33 should be deemed admitted in its entirety.

34.  Complainant did recall that she had rebuffed Yu's attempts to kiss her while walking across campus.  (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at VAS 00001315.)

**Response:**  Deny.

34a. Paragraph 33a above is incorporated herein.

34b. Paragraph 32a above is incorporated herein.

34c. Paragraphs 6a and 6b above are incorporated herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 34. *See* Vassar's General Objection No. 2. Yu avers in Response 31a that Complainant recalled rebuffing Yu's attempts to kiss her. According, Paragraph 34 should be deemed admitted in its entirety.

35. After rebuffing his advances throughout the evening, Complainant ended up in Yu's dormitory room. (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at VAS 00001316.)

**Response:** Deny.

35a. Paragraphs 6a, 6b and 32a above are incorporated herein.

35b. After MCW and Pete [sic] Yu decided to have sex, they figuring [sic] out where to go; MCW first phoned her roommate to inquire about the "availability" of her dorm room but was unable to reach her roommate, so they decided to go back to Peter Yu's dorm room instead; that as they walked from The Mug to Jewett Building in which Peter's dorm was located, MCW again placed her arms around Peter Yu; that upon reaching Peter Yu's dormitory, they took the stairs to Peter Yu's room on the fourth floor; that after Peter Yu and MCW used the bathroom, they met at Peter Yu's dorm room – MCW waited for Peter Yu in his dorm room while he used the bathroom. (Yu Decl. ¶¶ 5-8, 14.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 35. *See* Vassar's General Objection No. 2. Yu avers in Response 31a that Complainant recalled ending up in Yu's dormitory room and that Complainant rebuffed Yu's attempts to kiss her. Accordingly, Paragraph 35 should be deemed admitted in its entirety.

36. Complainant reported that while in his dormitory room Yu removed her clothes, used physical force to make her perform oral sex on him, and then had sexual intercourse with her without her consent despite her repeated attempts to push him away. (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at VAS 00001314.)

**Response:** Deny.

18

36a. In the dorm room, Peter Yu informed MCW that it would be "his first time" and she responded, "it's okay, I know what to do"; MCW, the sexually experienced one, took off her clothes and Peter Yu, the virgin, did the same with his clothes; they kissed and MCW on her own performed oral sex on Peter Yu, stating, "I know how to do this, I have done this before"; MCW then, using her hand and her teeth, ripped open the condom packet next to the bed and placed the condom on Peter Yu; Peter Yu began performing oral sex on MCW while she instructed him on where and how to do so; Peter Yu and MCW then engaged in sexual intercourse and kissed while doing so; that at one point, MCW and [sic] changed positions and MCW got on top of Peter Yu. (Yu Decl. ¶¶ 9-10, 14.)

36 b. Paragraphs 6a and 6b are incorporated herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 36. *See* Vassar's General Objection No. 2. Yu avers in Response 31a that Complainant recalled that Yu removed her clothes, used physical force to force her to perform oral sex on him and then had sexual intercourse with her despite her attempts to push him away. Accordingly, Paragraph 36 should be deemed admitted in its entirety.

37.     After what Complainant reported felt like a long time, Yu got off of her and she got dressed and ran back to her room. (Horowitz Aff. Exs. A, C, F; Roellke Aff. Ex. A at VAS 00001316-17.)

**Response:**     Deny.

37a. MCW and Peter Yu were interrupted by Peter Yu's roommate starting to enter the room and Peter Yu asked him to leave; following the interruption, Peter Yu and Ms. Walker did not resume sexual intercourse; MCW began to lament about her ex-boyfriend and stated that she was not ready to jump into anything new; the two got dressed, with MCW commenting on her "taking his virginity"; MCW then left the dorm room. (Yu Decl. ¶ 11, 14.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 37. *See* Vassar's General Objection No. 2. Yu avers that Complainant put on her clothes and left Yu's room. Yu's Response does not set forth any specific facts to dispute

that Complainant recalled that it felt like she was in Yu's dorm for a long time or that she ran back to her room.  Accordingly, Paragraph 37 should be deemed admitted in its entirety.

38.     Two female students, Student A and Student B, testified that they had observed Yu and Complainant on the night of the incident walking across campus.  (Roellke Aff. Ex. A at VAS 00001318-24.)

> **Response:**     Deny.
>
> 38a. The two female Students A (Carolina Guftason) and B (Sara Cooley) did not give sworn testimony under oath.  (Yu Decl. ¶ 29.)
>
> **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 38.  *See* Vassar's General Objection No. 2.  Accordingly, Paragraph 38 should be deemed admitted in its entirety.

39.     Student A said that Complainant was "pretty drunk" and "stumbling."  (*Id.* at VAS 00001323.)

> **Response:**     Admit but incomplete.
>
> 39a. The unsworn accounts of female Students A and B were that they were concerned about MCW's state of inebriation and had gone to Peter Yu's dorm room, spoke to the student resident dorm fellow (who called Peter Yu out of his dorm room), and learned that MCW was not there.  (Horowitz Aff. Exs. A, F; Roellke Aff. Ex. A at 00001324.)
>
> **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 39.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 39 should be deemed admitted in its entirety.

40.     Student A was "concerned [Complainant] was out of [her] senses" and "not in her right mind."  (*Id.* at VAS 00001323-24.)

> **Response:**     Deny.
>
> 40a. Paragraph 39a above is incorporated herein.

40b. Student A and Student B were not in the room when the sex occurred (Yu Decl. ¶¶ 8-10, 12, 14) and were not so concerned as to speedily make it to Peter Yu's dorm room. For all the supposed concern that Student A and Student B had for MCW, they were slow enough in getting to Peter Yu's dorm room that MCW had already left (Yu. Decl. ¶ 12), and Student B had the motive of wanting to interrupt MCW's effort to woo Peter as Student B had been dating Peter (Yu Decl. ¶ 3).

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 40. *See* Vassar's General Objection No. 2. Accordingly, Paragraph 40 should be deemed admitted in its entirety.

41. Complainant appeared to be using Yu for support—"she was holding on, if she was not she would have fallen." (*Id.*)

**Response:** Deny.

41a. Paragraph 32a above is incorporated herein.

42b [sic]. Paragraph 35b above is incorporated herein.

42c [sic]. In a court of law, the statement would be now allowed.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 41. *See* Vassar's General Objection No. 2. Yu's Response does not set forth any specific facts to dispute that Student A made the statement in Paragraph 41. Accordingly, Paragraph 41 should be deemed admitted in its entirety.

42. Student B agreed, noting that Yu "was supporting her weight." (*Id.* at VAS 0001322.)

**Response:** Deny.

42a. Paragraph 32a above is incorporated herein.

42b. Paragraph 35b above is incorporated herein.

42c. In a court of law, the statement would be not allowed.

21

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 42. *See* Vassar's General Objection No. 2. Yu's Response does not set forth any specific facts to dispute that Student A made the statement in Paragraph 42. Accordingly, Paragraph 42 should be deemed admitted in its entirety.

43. Both Student A and Student B testified that Complainant was so visibly drunk that they decided to intervene. (*Id.* at VAS 00001318-24.)

    **Response:** Deny.

    43a. Paragraph 38a above is incorporated herein.

    43b. Paragraph 39a above is incorporated herein.

    43c. Paragraph 40b above is incorporated herein.

    **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 43. *See* Vassar's General Objection No. 2. Yu's Response does not set forth any specific facts to dispute that Student A and Student B made the statements in Paragraph 43. Accordingly, Paragraph 43 should be deemed admitted in its entirety.

44. Having failed to reach the Student Fellow (residential advisor) in Yu's dormitory, Students A and B went to the dormitory and encountered the Student Fellow. (Horowitz Aff. Exs. A, F, Roellke Aff. Ex. A at VAS 00001319-25.)

    **Response:** Deny.

    44a. Paragraph 39a above is incorporated herein.

    **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 44. *See* Vassar's General Objection No. 2. Yu avers in Response 39a that Students A and B went to Yu's dorm room and spoke with the Student Fellow. Accordingly, Paragraph 44 should be deemed admitted in its entirety.

64175219_1

45.     When the Student Fellow and Student A went to Yu's room, they found that

Complainant had already left.  (Horowitz Aff. Exs. A, F, Roellke Aff. Ex. A at VAS 00001324.)

>    **Response:**     Admit.

46.     The Student Fellow testified that Yu did not appear to be intoxicated.  (Roellke

Aff. Ex. A at VAS 00001324; *see* Horowitz Aff. Exs. A, F.)

>    **Response:**     Deny.

>    46a. The student dorm resident fellow (Zach Hays) did not give
>    sworn testimony under oath. (Yu Decl. ¶ 29.)

>    46b. In a court of law, the statement would be not allowed.

>    46c. The statement was contrary to the contemporaneous Facebook
>    messages of Peter Yu and MCW.  (Yu Decl. Ex. A.)

>    **Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 46.  *See* Vassar's General Objection No. 2.  Yu's Response does not set forth

any specific facts to dispute that the Student Fellow made the statement in Paragraph 46.

Accordingly, Paragraph 46 should be deemed admitted in its entirety.

47.     Yu denied these accusations and contended that his encounter with Complainant

was consensual.  (Horowitz Aff. Exs. A, F; Roellke Aff. Ex. A.)

>    **Response:**     Admit but incomplete.

>    47a. Paragraph 32a above is incorporated herein.

>    47b. Paragraph 35b above is incorporated herein.

>    47c. Paragraph 36a above is incorporated herein.

>    47d. Paragraphs 6a and 6b above are incorporated herein.

>    **Reply:**  Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 47.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 47 should

be deemed admitted in its entirety.

48.     He stated that their encounter ended when his roommate entered the room and Yu told his roommate to leave; after his roommate left the room, Complainant began to cry and then departed.  (Horowitz Aff. Exs. A, F; Roellke Aff. Ex. A at VAS 00001318-20*; Yu Dep. 156:10-157:24.)

**Response:**     Deny.

48a. Paragraph 37a above is incorporated herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 48.  *See* Vassar's General Objection No. 2.  Yu avers in Response 37a that his roommate entered the room, he asked his roommate to leave, and Complainant then left his dorm room.  Yu's Response does not set forth any specific facts to dispute that Complainant began to cry prior to her departure.  Accordingly, Paragraph 48 should be deemed admitted in its entirety.

49.     Yu provided Vassar's investigators with Facebook messages he exchanged with Complainant in the months subsequent to the incident that he claimed showed that their encounter was consensual.  (Horowitz Aff. Ex. D.)

**Response:**     Admit but incomplete.

49a. The Facebook messages were put before the hearing panel, showing that the day after the sexual encounter, Peter Yu and MCW were communicating on Facebook, with MCW apologizing for leading Peter on and saying "I [MCW] had a wonderful time last night. . . ."  Also at that time on Facebook, MCW and Peter Yu discussed the apparent fact that Security was called on Peter because, wrote Peter, some students "thought I [Peter] might be potentially hurting somebody," to which MCW wrote back "I [MCW] will stand up for you [Peter] because you [Peter] were not."  Peter wrote that Security being called was "just" his student dorm fellow "overreacting."  (Yu Decl. ¶ 15, 32 & Ex. A.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 49.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 49 should be deemed admitted in its entirety.

50. The Facebook messages submitted by Yu were presented and discussed during the hearing and had been discussed in Mr. Horowitz' investigation report as well. (Yu Dep. 80:23-81:2; Roellke Aff. Ex. A; Horowitz Aff. Ex. F; Inoa Aff. ¶ 6; Kelly Aff. ¶ 6.)

**Response**: Deny.

50a. Paragraph 49a above is incorporated herein.

50b. The treatment of the Facebook messages by the panel members and Horowitz reflects Vassar's strained effort to portray the Facebook messages as incriminatory by showing that Peter knew that MCW was drunk the night in question, which bizarrely overlooks what the rest of the Facebook message show: that on the night in question, Peter Yu was drunk as well as MCW, MCW thought she had unfairly led Peter on and MCW "had a wonderful time"; and that for the next eight months, Peter and MCW continued to communicate on Facebook without any hint of a charge of non-consensual sex. (Yu Decl. Ex. A.) The notion that only females are incapacitated from consent by alcohol consumption is by definition gender biases. (See Yu Memorandum of Law.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 50. *See* Vassar's General Objection No. 2. Yu's avers in Response 49a that the Facebook messages were put before the hearing panel. Yu's Response does not set forth any specific facts to dispute that the Facebook messages were discussed during the hearing and had been discussed in Mr. Horowitz's report. Accordingly, Paragraph 50 should be deemed admitted in its entirety.

51. In these Facebook messages, Yu, among other things, admitted that Complainant was so drunk she did not know what she was doing, stating "I was so drunk I didn't know what I was doing. *I am sure that's the case for you as well*." (Horowitz Aff. Ex. D at VAS 00001563 (emphasis added); Yu Dep. 165:15-166:13.)

**Response**: Deny.

51a. Paragraph 50a above is incorporated herein.

25

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 51. *See* Vassar's General Objection No. 2. Yu's Response does not set forth any specific facts to dispute that in the Facebook messages Yu stated "I was so drunk I didn't know what I was doing. I am sure that's the case for you as well." Accordingly, Paragraph 51 should be deemed admitted in its entirety.

52. After considering the evidence, the Interpersonal Violence Panel unanimously found that Yu had violated Vassar's regulations concerning sexual misconduct. (Inoa Aff. Ex. A; Kelly Aff. ¶ 7; Parker Aff. ¶ 5.)

> **Response:** Deny.
>
> 52a. Immediately following the taking of testimony, the panel voted to find Peter Yu guilty (Iona Aff. ¶ 2; parker Aff. ¶ 2; Kelly Aff. ¶ 2); and Peter Yu was so informed in the hearing room (Yu Dep. 176:11-17; Bogan [sic] Decl. Ex. C at 00026). The panel's "written decision" consisted of a 1¼ page document on which handwritten notes were made stating that Peter Yu was responsible for violating Sections 5.05 and 20.2 of the College Regulations and that expulsion was the sanction as being "best for the college community." Information "considered in reaching a decision" were "three 3 witnesses," "Investigator finding," "Complainant testimony" and "Respondent testimony." As for "information NOT considered in reaching a decision," written but then marked out was "Facebook chat because it occurred after the in…." (Inoa Aff. Ex. A.) Panel members have stated in their testimony that they did consider the Facebook messages, but they do not explain how they square those Facebook messages with finding Peter Yu guilty. (Iona Aff. ¶ 6; Iona Dep. 95:15-100:14; Kelly Aff. ¶ 6; Harvey Dep. 105:7-106:4, 123:19-124:14.) Peter Yu was not given a copy of the "written decision," transcript or audio recording. (Yu Decl. ¶¶ 38-39.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 52. *See* Vassar's General Objection No. 2. Yu avers that the panel voted to find Yu guilty and that he was so informed at the hearing. Yu's Response does not set forth any specific facts to dispute that the panel's decision was unanimous or that it was not made after the

26

panel's consideration of the evidence presented at the hearing. Accordingly, Paragraph 52 should be deemed admitted in its entirety.

53.    In compliance with Vassar's procedures, Yu was informed at the hearing that he was found responsible. (Yu Dep. 176:11-17; Bogdan Decl. Ex. C at 00026.)

**Response:** Deny.

53a. Paragraph 52a above is incorporated herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 53. *See* Vassar's General Objection No. 2. Yu avers that the panel voted to find Yu guilty and that he was so informed at the hearing. Yu's Response does not set forth any specific facts to dispute that this was in compliance with Vassar's procedures. Accordingly, Paragraph 53 should be deemed admitted in its entirety.

54.    After hearing statements from Yu, Complainant, and Mr. Horowitz, in compliance with Vassar's procedures, the panel deliberated further to determine what sanctions would be appropriate. (Bogdan Decl. Ex. C at 00026; Inoa Aff. Ex. A; Kelly Aff. ¶ 8; Parker Aff. ¶ 6.)

**Response:** Deny.

54a. On March 8, 2013, the day after the hearing decision and only ten days after Peter Yu had first been informed of the charge of sexual misconduct, Dean Brown informed Peter Yu that he had been expelled from Vassar College. (Yu Decl. ¶ 35; Yu Dep. 171:21-172:13, 173:14-174:12, 176:18-177:15; Brown Aff. Ex. D.) Peter Yu was shocked by the expulsion. (Yu Decl. ¶ 36.)

54b. The Vassar Student Conduct Sanctioning Parameters state that for violations of Section 5.05 of Vassar's College Regulations, the sanction may range from probation to expulsion and that for violations of Section 20.2 of Vassar's College Regulations, sanction may range from suspension to expulsion. (Yu Decl. ¶ 37 & Ex. K; Brown Aff. Ex B.) The Interpersonal Violence Panel Rules and Procedures state that character statements and impact statements will be taken into consideration when the panel considers the severity of the sanctions; and the Vassar College Regulations 2012/2013 consider the "precedents in similar cases"

and "student's disciplinary record." (Yu Decl. ¶ 37 & Exs. L, M p. 135.)  Accordingly, Peter Yu submitted three character statements written on his behalf and an impact statement.  (Yu Decl. ¶ 37 & Exs. N-O.)  Peter had no prior history of sexual misconduct on his disciplinary record, and the panel was provided a precedent of another student found "responsible" of the same charges, Section 5.05 and 20.02, and only received suspension for one term.  (Yu Decl. ¶ 37 & Ex. P.)  Yet, Peter received the highest sanction possible pursuant to Vassar's sanctioning parameters.  (Yu Decl. ¶ 37 & Ex. I.)  The panel members could not explain why the penalty was severe in Peter's case.  (Inoa Dep. 131:8-12; Harvey Dep. 149:22-153:3.).

**Reply:**  Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 54.  *See* Vassar's General Objection No. 2.  Yu's Response does not set forth any specific facts to dispute that after hearing statements from Yu, Complainant, and Mr. Horowitz, in compliance with Vassar's procedures, the panel deliberated further to determine what sanctions would be appropriate.  Accordingly, Paragraph 54 should be deemed admitted in its entirety.

55.     Having deliberated, the panel determined that Yu should be expelled.  (Inoa Aff. Ex. A; Kelly Aff. ¶ 8; Parker Aff. ¶ 8.)

**Response:**     Deny.

55a. Paragraph 54b above is incorporated herein.

**Reply:**  Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 55.  *See* Vassar's General Objection No. 2.  Yu's Response does not set forth any specific facts to dispute that having deliberated, the panel determined that Yu should be expelled.  Accordingly, Paragraph 55 should be deemed admitted in its entirety.

56.     Early the following morning, Dean Brown informed Yu in writing that he had been expelled.  (Yu Dep. 173:14-174:12, 176:18-177:15; Brown Aff. Ex. D.)

**Response:**     Admit.

57.     Yu appealed his expulsion to the College Regulations Appeal Committee (the "Appeal Committee").  (Yu Dep. 174:25-175:7; Roellke Aff. Ex. C.)

> **Response:**     Admit.

58.     As Yu was informed, there are three grounds upon which a student may appeal: (1) procedural error; (2) new evidence; or (3) sanctions disproportionate to the severity of the violation.  (Roellke Aff. Ex. B; Brown Aff. Ex. E at VAS 00000189.)

> **Response:**     Admit but incomplete.
>
> 58a. Peter Yu was informed that under Vassar's regulations, the only three grounds for appeal were: (1) procedural error; (2) new evidence; or (3) sanctions disproportionate to the severity of the violation.  (Roellke Aff. Ex. B; Brown Aff. Ex. E at 00000189.)  Yu's argument on appeal was required to be kept within these limitations, asserting that there were procedural errors and a disproportionate punishment.  (Roellke Aff. Ex. C.)
>
> **Reply:**  Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 58.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 58 should be deemed admitted in its entirety.

59.     The Appeal Committee consists of two faculty members selected from the same group of faculty that are eligible to serve on an Interpersonal Violence Panel, with the Dean of the College serving as a non-voting chair.  (Brown Aff. Ex. E at VAS 00000188; Roellke Aff. ¶¶ 3-4.)

> **Response:**     Deny.
>
> 59a. The appeal panel consisted of two voting faculty members and the Dean of the College serving as a non-voting chair.  (Brown Aff. Ex. E at 00000188.)
>
> **Reply:**  Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 59.  *See* Vassar's General Objection No. 2.  Yu avers that the appeal panel consisted of two voting faculty members and the Dean of the College serving as a non-voting

chair. Yu's Response does not set forth any specific facts to dispute that the two faculty

members were selected from the same group of faculty that are eligible to serve on an

Interpersonal Violence Panel. Accordingly, Paragraph 59 should be deemed admitted in its

entirety.

60. The Appeal Committee considers all materials considered by the hearing panel as

well as any appeal statements submitted by the appealing student, the complainant, and the

hearing panel chair. (Brown Aff. Ex. E at VAS 00000189; Roellke Aff. ¶ 4.)

> **Response**: Deny.
>
> 60a. While Vassar gives assurances about a full record being
> provided to the appeal panel, the tape of the hearing was inaudible,
> there is no complete transcript and the "written decision" provided
> no detail; and Peter Yu was not provided with what transcript there
> was and did not receive the written decision. (Yu Decl. ¶¶ 38-39.)
>
> 60b. Paragraphs 32a, 35b, 36a, 50b and 54b above are incorporated
> herein.

**Reply:** Yu's Response does not set forth any specific facts to dispute those set

forth in Paragraph 60. *See* Vassar's General Objection No. 2. He does not set forth any specific

facts to dispute that the Appeal Committee considers all materials considered by the hearing

panel as well as any appeal statements submitted by the appealing student, the complainant, and

the hearing panel chair. Accordingly, Paragraph 60 should be deemed admitted in its entirety.

61. The Appeal Committee's findings are final. (Brown Aff. Ex. E at VAS

00000190.)

> **Response**: Deny as incorrectly stated.
>
> 61a. The Appeal Committee's findings are final in the sense that
> there is no further administrative recourse or remedy at Vassar.
> (Brown Aff. Ex. E.)

**Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 61. *See* Vassar's General Objection No. 2. Yu avers that the Appeal Committee's findings are final. Accordingly, Paragraph 61 should be deemed admitted in its entirety.

62. Yu submitted a statement to the Appeal Committee arguing that procedural errors occurred and that his punishment was disproportionate to the severity of the violations. (Roellke Aff. Ex. C).

      **Response:** Admit but incomplete.

      62a. Paragraph 58a above is incorporated herein.

      62b. Paragraph 60a above is incorporated herein.

      **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 62. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 62 should be deemed admitted in its entirety.

63. Complainant and the panel chair submitted statements to the Appeal Committee responding to Yu's statement. (Roellke Aff. Ex. D; Inoa Aff. Ex. B.)

      **Response:** Admit.

64. On March 27, 2013, the Appeal Committee denied Yu's appeal. (Yu Dep. 177:16-178:3; Roellke Aff. Ex. E.)

      **Response:** Admit but incomplete.

      64a. On March 27, 2013, nineteen days after Peter Yu's expulsion, the Appeals Committee denied Yu's appeal. (Yu Dep. 177:16-178:3; Roellke Aff. Ex. E.)

      **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 64. *See* Vassar's General Objection No. 3. Accordingly, Paragraph 64 should be deemed admitted in its entirety.

65.     Shortly after his expulsion, Yu enrolled at Blue Data Language School in New York City for the "sole reason" of maintaining his student visa.  (Yu Dep. 122:14-124:12.)

> **Response:**     Admit but incomplete.
>
> 65a. Following expulsion from Vassar in March 2013, Yu filed eleven applications to other educational institutions, and two other educational institutions advised Peter Yu not even to bother applying given the circumstances of his departure from Vassar. (Yu Decl. ¶ 48.)  As part of that application process, Peter Yu had to sign a waiver so that he could allow those educational institutions access to his education file at Vassar, and Vassar released the whole file including the portion relating to the accusations of sexual misconduct by MCW.  As a result, nine of the eleven institutions rejected Peter Yu, including three that had accepted him in 2012, with many of those colleges expressly referring to the expulsion for sexual misconduct as the reason.  (Yu Decl. ¶¶ 49-50 & Ex. C.)   Peter is presently attending another university, but not one of the same caliber as Vassar, which will impact his future employment prospects.  (Yu Dep. 125:16-19, 130:3-5; Yu Decl. ¶¶ 51-52.)   Yu was recently prevented from applying for study to educational institutions abroad due to his tainted record.  (Yu Decl. ¶¶ 53-55.)

> **Reply:** Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 65.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 65 should be deemed admitted in its entirety.

66.     Thereafter, Yu was accepted by, and enrolled as a student in, an undisclosed university.  (Yu Dep. 125:16-19.)

> **Response:**     Deny as incorrectly stated and incomplete.
>
> 66a. Paragraph 65a above is incorporated herein.

> **Reply:**  Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 66.  *See* Vassar's General Objections 2 and 3.  Yu avers in Paragraph 65a of his response that he is presently attending another university.  Accordingly, Paragraph 66 should be deemed admitted in its entirety.

64175219_1

67.     Yu remains a student of that university today.  (Yu Dep. 130:3-5.)

**Response:**     Admit.

68.     On or about June 25, 2013, Yu filed his Complaint in this action.  Yu included in his Complaint numerous explicit allegations about his sexual encounter with Complainant unnecessary to plead his claims.  (*See, e.g.*, Compl. ¶¶ 31, 32, 34.)

**Response:**     Admit but incomplete.

68a. The Complaint truthfully states the facts: that are supported by Peter Yu's sworn testimony, that show anti-male gender bias accounting for what was an erroneous outcome from a very flawed proceeding that ended in a severe penalty and that form the basis of Peter Yu's legal claims.  (Yu Decl. ¶¶ 2-55; Yu Memorandum of Law.)

**Reply:**  Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 68.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 68 should be deemed admitted in its entirety.

69.     Yu's lawsuit became the subject of media attention, including an article in the New York Post published the day after the Complaint was filed, and an article in the Chronicle of Higher Education in which Plaintiff's counsel was quoted.  *See* Erin Calabrese, *Row over 'rape': Expelled student sues Vassar College after he claims he was booted over allegedly false rape accusation by team member*, N.Y. Post, June 26, 2013, http://nypost.com/2013/06/26/row-over-rape-expelled-student-sues-vassar-college-after-he-claims-he-was-booted-over-allegedly-false-rape-accusation-by-team-member/; Libby Sander, *3 Students, Accused of Sexual Misconduct, Sue Their Colleges*, Chronicle of Higher Education, Sep. 20, 2013, at A14.

**Response:**     Admit but incomplete.

69a. Vassar notes the publicity as to this case, but this case is not unique in that regard.  The subject of how colleges treat or mistreat accusations of sexual misconduct is very much in the news today, as conflicting views are presented by the Obama Administration

pressing for action by universities, *see* "U.S. Lists Colleges Under Inquiry Over Sex-Assault Cases," *New York Times* (May 1, 2014), and conservative commentators critical of universities in their handling of such accusations, *see* Editorial, "The White House Flunks A Test On Sexual Assault," *Wall Street Journal* (May 6, 2014); T. Sowell, "Sexual Assault on Campus," *National Review Online* (May 13, 2014) (the criminal legal system should deal with sexual assault, not universities); T. Sowell, "Kangaroo Courts on Campus," *Front Page Magazine* (May 13, 2014) (denouncing university kangaroo courts).

     **Reply:**  Yu's Response does not set forth any specific facts to dispute those set forth in Paragraph 69.  *See* Vassar's General Objection No. 3.  Accordingly, Paragraph 69 should be deemed admitted in its entirety.


Dated:   New York, New York
        May 29, 2014

                            Respectfully submitted,


                            HUGHES HUBBARD & REED LLP


                            By: /s/ George A. Davidson
                                George A. Davidson
                                Ned H. Bassen
                                Alexander W. Bogdan
                                One Battery Park Plaza
                                New York, New York 10004
                                (212) 837-6000
                                davidson@hugheshubbard.com
                                bassen@hugheshubbard.com
                                bogdan@hugheshubbard.com

                                Attorneys for Defendant Vassar College