UNITED STATES DISTRICT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK

---

XIAOLU "PETER" YU,

                Plaintiff,

- against -

VASSAR COLLEGE,

                Defendant.

CASE NO. 13-cv-04373 (HB)

---

## SUPPLEMENTAL BREIF IN OPPOSITION TO DEFENDANT VASSAR COLLEGE'S MOTION FOR SUMMARY JUDGMENT

NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff
363 Seventh Avenue - 5th Floor
New York, New York 10001
(212) 736-4500

# TABLE OF CONTENTS

                                                                                                            **Page**

TABLE OF AUTHORITIES............................................................................................ii

PRELIMINARY STATEMENT.......................................................................................1

    THE PANEL'S DECISION FINDING PLAINTIFF RESPONSIBLE FOR SEXUAL
    MISCONDUCT RESTED ON SELF-SERVING STATEMENTS BY THE
    COMPLAINANT, UNVERIFIED TESTIMONY BY TWO FEMALE STUDENT
    WITNESSES & AN UNCHALLENGED INVESTIGATION REPORT......................3

    VASSAR COLLEGE'S DISCIPLINARY PROCESS & SEXUAL MISCONDUCT
    POLICY DISCRIMINATE AGAINST MALE STUDENTS AT VASSAR.................7

CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Yusuf v. Vassar College*,
    35 F.3d 709 (2d Cir. 1994)..................................................................2


**Statutes & Rules**

Title IX of the Education Amendments of 1972....................................................1,5,9

## PRELIMINARY STATEMENT

As described in his Opposition to defendant's, Vassar College, Motion for Summary Judgment, on March 7, 2013, a "hearing" was held by a tripartite panel ("Panel"), Jane Parker, a Physical Education Lecturer, Sophia Harvey, Associate Professor of Film; and Jamie Kelly, an Assistant Professor of Philosophy, together with a non-voting chairperson, Luis Inoa, to determine plaintiff's, Peter Yu ("Plaintiff"), responsibility for charges of sexual misconduct purportedly committed *one year prior* against fellow student and rowing team member, Mary Claire Walker despite her Facebook messages to Plaintiff immediately after the evening that expressed Ms. Walker's having a good time and having led Plaintiff on. (Yu Decl. ¶¶ 2- 15 & Ex. Yu Ex. A.)

In support of Plaintiff's causes of action under Title IX and state law, Plaintiff conducted a total of thirteen (13) depositions of various Vassar administrators, including the Title IX Investigator, the Title IX Coordinator, and student witnesses who were identified by Plaintiff or Ms. Walker throughout the disciplinary hearing process. However, due to Hon. Harold Baer's scheduling constraints, two (2) depositions, namely, panel member Jamie Kelly, and Title IX Coordinator Julian Williams, were completed *after* the Motion was fully submitted. Plaintiff submits that the deposition testimony of Mr. Kelly and Mr. Williams introduced *new information* and *has raised additional triable issues of fact* as to Vassar College's anti-male gender bias in violation of Title IX and state law.

Mr. Kelly's testimony demonstrates that the Panel relies upon the Title IX Investigator, Richard Horowitz, to perform a check of all student witnesses for potential motives and/or biases, which Mr. Horowitz testified he did not perform in this case. (Kelly Dep. 117:21-118:12, 168:10-169:10.) Furthermore, without the testimony of the two student witnesses, there was

1

nothing and no one to corroborate Ms. Walker's self-serving statements, which completely contradicted her written statements made one (1) year prior admitting that she had a "wonderful time" and that she was "sorry [led] [Plaintiff] on". (Kelly Dep. 112:14-24.) From Mr. Kelly's deposition it has been established that the Panel essentially ignored Plaintiff's testimony and the written Facebook messages between Plaintiff and Ms. Walker during their deliberation of Plaintiff's responsibility for the charges of sexual misconduct. Although he could not deny that the Facebook messages were chronologically closer to the date of the incident (one day later) than the student witness testimony (one year later), and were "relevant" to the charges at hand, the Panel, inexplicably, did not consider such messages important enough to overcome unsworn, unverified testimony from two witnesses who were, demonstrably, not competent to testify. (Kelly Dep. 83:10-20, 93:15-94:6, 96:2-7.) As such, the Panel wrongfully placed a great reliance on the testimony from such student witnesses in order to reach the erroneous decision that Plaintiff was responsible for sexual misconduct against Ms. Walker.

The testimony of Mr. Williams demonstrates that Vassar College uses a double standard to analyze the male student's use of alcohol with respect to a charge of sexual misconduct versus the female student's use of alcohol with respect to her complaint of sexual misconduct, because, invariably, complaints of sexual misconduct are only filed by female students against male students at Vassar College. (Williams Dep. 83:22-85:5, 85:13-17.) Thus, Mr. Williams' testimony raises triable issues of fact with respect to the various "evidentiary weaknesses" and "procedural flaws" to support Plaintiff's Title IX claim that Vassar College came to an erroneous outcome reached by a flawed procedure. *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

## The Panel's Decision Finding Plaintiff Responsible For Sexual Misconduct Rested On Self-Serving Statements By The Complainant, Unverified Testimony By Two Female Student Witnesses & An Unchallenged Investigation Report

The Panel's decision to find Plaintiff responsible for sexual misconduct against Mary Claire Walker was based on the following factors: (i) testimony of Ms. Walker; (ii) testimony of Sara Cooley and Carolina Gustafson; (iii) Title IX Investigator Richard Horowitz's Final Investigation Report; and, purportedly, (iv) Plaintiff's testimony. (Kelly Dep. 65:19-67:15.)

As indicated in Mr. Kelly's testimony, the Panel relied heavily on the statements and testimony of two student witnesses, Sara Cooley and Carolina Gustafson, to corroborate Ms. Walker's claim of incapacitation on the night of the Incident. (Kelly Dep. 112:14-24.)

> We had testimony from two individuals who believed her to be very drunk. We had her own account of the evening, which said that she was very, very drunk. That all seemed coherent in a way that made it credible.

(Kelly Dep. 112:14-24.)

Apparently, however, the Panel did not question Ms. Cooley or Ms. Gustafson about their definition of "very drunk", even though Mr. Kelly admitted that one person's definition of "very drunk" can vary from another's. (Kelly Dep. 70:8-71:3.) The Panel also did not believe it was important to question whether Ms. Cooley or Ms. Gustafson have ever seen Ms. Walker intoxicated before, even though Mr. Kelly admitted that not everyone acts the same way when they are intoxicated. (Kelly Dep. 110:12-18, 111:8-10.) The Panel did not challenge Ms. Cooley or Ms. Gustafson's statements and took them at face-value.

Furthermore, the Panel relied on Mr. Horowitz to perform a "background" check on the witnesses to uncover any potential biases and motives. (Kelly Dep. 117:21-118:12, 168:10-169:10.)

3

> I don't think of it as my role as a panelist to sort of be grilling witnesses. But I think we rely upon the investigator to make those kinds of inquiries and to try to assess out those kinds of conflicts.

(Kelly Dep. 117:21-25.)

Similarly, Mr. Williams claims that there is no need to engage in a detailed investigation into a witness's specific background, biases or reputation for veracity because he relies on "seasoned investigators". (Williams Dep. 79:7-22.)

Notwithstanding the Panel's reliance on Mr. Horowitz to perform this function with respect to the witnesses, the Panel never asked to confirm that Mr. Horowitz actually engaged in any diligence to discover potential biases or motives. (Kelly Dep. 123:2-9.) To this end, Mr. Horowitz testified that he <u>did not perform such investigation into the witnesses' potential biases or motives</u> and that it is not his general practice to engage in such investigation efforts. (Horowitz Dep. 252:25-253:16.) These facts, combined with the fact Mr. Horowitz testified as if he were a fact witness with personal knowledge (see Pl Mem. 9, 17) demonstrate that Vassar College's disciplinary process is fatally flawed in that it results in the witness testimony and statements against Plaintiff being taken at face value.

The Panel members testified that the Final Investigation Report was an important factor and consideration when they deliberated whether to find Mr. Yu responsible for the charges. (Kelly Dep. 75:10-23; Parker Dep. 86:15-87:20; 93:2-8; Harvey Dep. 22:11-25.) The Panel members do not perform their own investigation so they rely on the Final Investigation Report to provide them with the relevant witnesses and facts gathered by the Title IX Investigator, Mr. Horowitz. (Williams Dep. 42:6-43:17.) The deposition of Julian Williams, Title IX Coordinator for Vassar College, highlighted the inherent problems within the Final Investigation Report.

First, Mr. Williams places trust in and defers to Mr. Horowitz to determine what information is "relevant" to include during his investigation. (Williams Dep. 54:25-55:16.) The great amount of deference given to Mr. Horowitz to determine what is "relevant" to be shown to the Panel in his Final Investigation Report is inherently problematic when there is no minimum requirement of training sessions that Mr. Horowitz (or anyone at Vassar College) is required to attend per year (Williams Dep. 15:23-16:3.) and there is no substantive audit of Mr. Horowitz's compliance with Title IX (64:9-65:13.). Moreover, Mr. Williams claims that there is no need to engage in a detailed investigation into a witness's specific background, biases or reputation for veracity because he relies on "seasoned investigators". (Williams Dep. 79:7-22.) However, Mr. Horowitz testified that he had only been an investigator for Vassar College since May 2012 (Horowitz Dep. 7:16-8:2), which was less than one (1) year from the date of the Hearing. Mr. Williams acknowledged that Mr. Horowitz had only been a Title IX investigator for a short time prior to the date of the Hearing. (Williams Dep. 80:3-13.) In fact, Mr. Horowitz testified that Mr. Yu's Hearing occurred during the first year of Mr. Horowitz's role as Title IX Investigator. (Horowitz Dep. 68:24-69:12).

Also, although he claims to provide a supervisory role to the investigation (Williams Dep. 25:21-25.), Mr. Williams testified that he does not double-check Mr. Horowitz's investigation or confirm the accuracy of the information that Mr. Horowitz inputs into the Final Investigation Report. (Williams Dep. 58:22-61:6.) In fact, Vassar College does not have any procedure in place to provide a second opinion or review Mr. Horowitz's work prior to the Panel's receipt of the Final Investigation Report. (Id.) While Mr. Williams "reviews" the Final Investigation Report, Mr. Williams does not review the witness statements, the investigator's

handwritten interview notes or any other material in connection with his review of the Final Investigation Report. (Williams Dep. 59:15-61:6.)

Meanwhile, the Panel also received Plaintiff's testimony that Ms. Walker was not so incapacitated and that he had no reason to believe she was incapacitated, which was supported by written Facebook messages authored by Ms. Walker the day after the Incident. The Panel, however, did not find Plaintiff's testimony credible because "[e]verything – besides Mr. Yu's testimony – indicated that Ms. Walker was drunk. And that – that's what swayed my assessment." (Kelly Dep. 114:5-11.) However, the Panel was wrong; the Facebook emails fully support Plaintiff's position that either Ms. Walker was not incapacitated or that Plaintiff had no reason to believe that she was incapacitated on the night of the Incident.

Mr. Kelly acknowledged that the Facebook emails were relevant to the charge of sexual misconduct and that the Panel should have considered them during their deliberation of the charge because "they had to do with statements about the night in question by the two people involved" (Kelly Dep. 93:15-94:6.) Yet, the Facebook emails were not listed as an item of consideration in reaching the Panel's decision and were not given a significant consideration in the Panel's final decision because they "[weren't] as central as the other things" (Kelly Dep. 83:10-20.) and the Panel favored live unsworn statements made by Ms. Walker and the student witnesses *one year after the Incident* over Ms. Walker's written statements that she "had a wonderful time", that Peter Yu "did nothing wrong", that she would "stand up for [Peter Yu]" if any charges were brought, and that she was "really sorry [she] led [him] on last night" *the day after the Incident.* (Kelly Dep. 96:2-7.)

## Vassar College's Disciplinary Process & Sexual Misconduct Policy Discriminate Against Male Students at Vassar

According to Vassar College Regulations, a respondent (i.e. Plaintiff) will be found "responsible" for violating Vassar College's Sexual Misconduct Policy where the accused student knew or should have known that the complainant was incapacitated, by reason of alcohol, drug use, unconsciousness or blackout, at the time of the sexual activity. (Brown Aff. Ex. E at VAS 00000140.) Mr. Kelly acknowledged that the Panel must engage in a two-part inquiry when determining whether or not the accused student is responsible for violating Vassar College's Sexual Misconduct Policy: the first inquiry is whether the complainant was incapacitated, and the second inquiry is *whether the accused student knew or should have known that the complainant was incapacitated*. (Kelly Dep. 159:25-160:19.)

As a result, it was not enough to determine whether Ms. Walker established that she was incapacitated; the Panel was also required to determine whether Plaintiff knew or should have known that Ms. Walker was incapacitated. However, neither Mr. Horowitz nor the Panel engaged in any meaningful inquiry into whether Plaintiff knew or should have known that Ms. Walker was incapacitated because they ignored *his* uncontroverted testimony that: (i) Ms. Walker called her roommate to check if her room was available to have sex in it (Kelly Dep. 160:20-161:7.); (ii) that Ms. Walker took off her own clothes and performed oral sex on Plaintiff (Kelly Dep. 161:8-163:12.); (iii) that Ms. Walker picked up the condom next to the bed, and using her hand and her teeth, she ripped it open to place it on Plaintiff (Kelly Dep. 165:6-166:5.); (iv) that Ms. Walker knew Plaintiff was a virgin and commented on how she "took Peter Yu's virginity" after the sexual intercourse (Kelly Dep. 166:6-16.); and (v) that Plaintiff was very drunk (Yu Dep. 162:8-15, 165:6-9, 166:4-11, 186:4-5.)

7

Plaintiff's own intoxication is relevant to whether he knew or should have known that Ms. Walker was incapacitated since his own judgment was clouded that evening. Mr. Yu testified that he was very intoxicated on the night of the Incident (Yu Dep. 162:8-15, 165:6-9, 166:4-11, 186:4-5.), that at least one witness, Sara Cooley, testified that she observed that Mr. Yu was drunk on the night of the Incident (Yu Dep. 48:16-18, 52:8-9.), and that his Facebook emails with Ms. Walker indicated that he was very drunk that night (Yu Dep. 162:8-10.). However, the Panel ignored Mr. Yu's level of intoxication and/or incapacitation (Kelly Dep. 150:9-153:14, 170:16-171:10) and the Panel failed to make any meaningful inquiry into Plaintiff's level of intoxication, then, summarily concluded that he was not intoxicated. (Kelly Dep. 137:22-139:13.)

To that end, Mr. Williams testified that the level of intoxication by the respondent (i.e. Plaintiff) is not a factor considered by the Panel. "They are specifically trained to look at and exam[ine] the level of intoxication versus incapacitation for the complainant and not the [Plaintiff]". (Williams Dep. 83:4-10). Strikingly, Mr. Williams provided the following testimony on how intoxication and/or incapacitation of the accused student is analyzed in cases of sexual misconduct at Vassar College:

> What I will say and what I can say is that typically the level of intoxication, of voluntary intoxication, by the [Plaintiff] typically isn't a factor that the panelists are concerned with. They are specifically trained to look at and exam the level of intoxication versus incapacitation for the complainant and not the [Plaintiff].

(Williams Dep. 83:3-10.)

> In our regulations it states clearly, as I understand it, that the level of incapacitation on behalf of the [Plaintiff] is not a factor that is either a mitigating factor or an exculpatory factor.
>
> Q. So on the one hand you are saying that Vassar must consider whether the [Plaintiff] knew or should have known the level of incapacitation of the

8

complainant, but on the other hand you are saying that that [Plaintiff] cannot use his own intoxication or incapacitation in that analysis?

MR. BOGDAN: Objection. You can answer.

A. I would say that is correct. And just sort of in a nutshell, that person's voluntary incapacitation is not a factor that will be investigated or -- we'll investigate it, but it's not a factor that will be sort of examined by the panelists.

Q. So what about the complainant's voluntary intoxication or incapacitation, would that then be considered a mitigating factor for in favor of the [Plaintiff]?

MR. BOGDAN: Objection. You can answer.

A. The complainant's level of incapacitation is certainly something that would be investigated. But the fact that they voluntarily ingested alcohol or drugs or whatever that got to that level of incapacitation, is not a factor that the panel is trained or instructed to look at or hold against the complainant.

(Williams Dep. 83:22-85:5.)

When asked whether Vassar College has ever had a case involving a male complainant filing a charge of sexual misconduct against a female respondent, Mr. Williams stated, "No". (Williams Dep. 85:13-17.) Based on the fact that, invariably, sexual misconduct charges are filed by female students against male students exposes, combined with the double standard applied to the analysis of alcohol use and intoxication of the accused student vs. the complainant, Plaintiff has raised an issue of fact regarding Vassar College's outright sex discrimination against male students in violation of Title IX.

## CONCLUSION

Based on the foregoing, Defendant Vassar College's motion for summary judgment should be denied, and the Court should order such further and other relief as deemed just and proper.

Dated: New York, New York
July 1, 2014

NESENOFF & MILTENBERG LLP
Attorneys for Plaintiff Xiaolu Peter Yu

By: _____
Andrew T. Miltenberg, Esq. (AM 7006)
Kimberly C. Lau, Esq. (KL 9374)
Philip A. Byler, Esq. (PB 1234)
363 Seventh Avenue – Fifth Floor
New York, New York 10001