UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAOLU "PETER" YU,

                Plaintiff,

   - against -

VASSAR COLLEGE,

                Defendant.

CASE NO. 13-cv-04373 (RA) (MHD)

**VASSAR COLLEGE'S RESPONSE TO PLAINTIFF PETER YU'S SUPPLEMENTAL BRIEF**

64458987_2

## INTRODUCTION

Plaintiff Yu's Supplemental Brief in Opposition to Defendant Vassar College's Motion for Summary Judgment does not identify any evidence that would show that Vassar discriminated against Yu because of his gender.  The two depositions taken after Vassar's Motion was fully-briefed of panel member Professor Jamie Kelly and Director of Equal Opportunity and Affirmative Action Julian Williams only confirm that there are no genuine issues of material fact that warrant a trial on Yu's claims.

## ARGUMENT

### I.  YU HAS NOT IDENTIFIED ANY EVIDENCE OF GENDER DISCRIMINATION

#### A.  Yu's Expulsion Was Not the Result of a Flawed Proceeding Motivated by Bias

Professor Kelly's testimony confirms that the decision of the panel was based on their consideration of all the evidence put before it.  Professor Kelly testified that in particular the testimony of the student witnesses supported the panel's findings that Complainant[1] was too incapacitated to engage in sexual conduct with Yu.  Professor Kelly stated that the testimony of these students, who observed Complainant to be so intoxicated on the night in question that they felt the need to attempt to intervene to prevent a sexual encounter between her and Yu, "indicated they observed a level of intoxication which was compatible with [Complainant] being incapacitat[ed]."  (Kelly Dep. 69:12-13.)[2]

That Professor Kelly credited the live testimony of these witnesses and Complainant over statements on Facebook Yu and Complainant exchanged a year prior to the

---

1. Unless otherwise indicated, capitalized terms and abbreviations maintain the same meanings as they do in Vassar's Memorandum of Law and Reply Memorandum of Law.

2. References to "Kelly Dep." refer to the Deposition of Jamie Kelly, excerpts from which are attached as Exhibit A to the Supplemental Declaration of Alexander Bogdan, sworn to August 11, 2014, submitted herewith.

hearing does not show that Professor Kelly or the other panelists discriminated against Yu because of his gender. (*Id.* at 95:8-25.) Professor Kelly testified that he did, in fact, consider the Facebook messages that Yu argues are exculpatory, but found that Complainant's live testimony provided a credible explanation for why she would have exchanged Facebook messages with Yu after the incident. (*Id.* at 82:9-24, 83:21-84:10, 90:12-91:6.) As Professor Kelly recounted, Complainant testified that she was "trying to work through the incident and trying to move beyond it" as "an explanation why she had sent the messages." (*Id.* at 91:4-6.) Complainant "explained that she was shocked . . . and was just trying to find a way to get through it and she was attempting to kind of just make it go away in one way or another. And that was why she wrote the message." (*Id.* at 130:9-20.) Professor Kelly found Complainant's live testimony to be "credible" in conjunction with the testimony of the other student witnesses and that her explanation for the messages she sent over Facebook a year prior "seemed plausible." (*Id.* at 94:12-95:1, 130:21-131:22.) None of this testimony creates an issue of fact that would show Vassar discriminated against Yu because of his gender.

    Yu's complaints that the panel accepted the testimony of the students and Complainant at "face value" and that the panel failed to evaluate the credibility of the witnesses mischaracterizes Professor Kelly's testimony. (*See* Pl.'s Supp. Br. 3, 4.) Professor Kelly specifically discussed what he did to evaluate the witnesses' credibility and why he found Complainant and the other student witnesses to be credible. (Kelly Dep. 102:24-104:20.) For example, Professor Kelly found that the details provided by the student witnesses concerning the actions they took that evening, including their testimony that they went back to a student's dormitory room to discuss what to do next after observing Complainant's obvious level of extreme intoxication, "gave credence to what they were saying." (*Id.* at 103:22-104:20.)

Professor Kelly found that the testimony of the two individuals "who believed her to be very drunk" and Complainant's own account "that she was very, very drunk" made their testimony "credible." (*Id.* at 112:14-24.) Professor Kelly also evaluated the credibility of Yu's testimony and found it to be not as credible as Complainant because it "didn't seem to fit with everything else in the case." (*Id.* at 113:15-19.) Indeed, according to Professor Kelly, Yu's attempts to downplay Complainant's level of intoxication were not credible because "[e]verything – besides Mr. Yu's testimony – indicated that [Complainant] was drunk." (*Id.* at 112:25-114:11.)

Yu's attempts to use Mr. Williams' testimony to discredit the investigation conducted by Vassar's Title IX investigator Rich Horowitz mischaracterize record testimony and, in any event, fail to raise any genuine issues of material fact that would show Vassar discriminated against Yu because of his gender. For example, Yu complains that Vassar's investigation was somehow inadequate because Mr. Williams did not conduct his own separate investigation to "double-check" the contents of Mr. Horowitz' investigation report. (Pl.'s Supp. Br. 5.) Yu offers no authority that an institution's reliance on its trained investigator's work,[3] without his supervisor double-checking it, violates Title IX. As Mr. Williams explained, it is "[t]he role of the investigator [] to investigate." (Williams Dep. 25:11-12.)[4] Mr. Williams' role during an investigation "is to assist and supervise the investigation, as well as to be a resource for the complainant and the respondent should there be questions about the overall process, about the hearing process or the investigative process." (*Id.* at 25:21-25.) As Mr. Williams explained,

---

3. There can be no dispute that Mr. Horowitz received training necessary to serve in his position as a Title IX investigator, which he described in detail at deposition. (*See* Horowitz Dep. 7:11-16:3; 25:10-36:10; 101:14-102:2; 107:11-111:12; 112:6-14.)

4. References to "Williams Dep." refer to the Deposition of Julian Williams, excerpts from which are attached as Exhibit B to the Supplemental Declaration of Alexander Bogdan, sworn to August 11, 2014, submitted herewith.

3

in order to perform this role "effectively . . . you can't be the one doing the investigation, [] you have to be somewhat separated from it. So there is a specific separation of roles [] set up [] at Vassar." (*Id.* at 26:2-6.) However, contrary to Yu's statements, Mr. Williams testified that he does conduct an "audit and review" of Mr. Horowitz's performance as an investigator. (*Id.* at 64:9-20.) Mr. Williams also reviews Mr. Horowitz's investigation report as a matter of practice, performing a "holistic review" to determine if there is sufficient information in the report to aid the panelists in their decision-making. (*Id.* at 56:7-57:4.)[5]

> B. Vassar's Disciplinary Process and Sexual Misconduct Policy Do Not Discriminate Against Male Students

Yu's argument that it is improper for Vassar to not consider the accused student's level of intoxication in determining whether a complainant was incapacitated is unsupported by the record, the law, and even by the authority that Yu himself has put before this Court.

Vassar's regulations provide that consent to sexual intercourse "cannot be gained . . . by taking advantage of the incapacitation of another, where the accused knows or should have reasonably known of such incapacitation." (Brown Aff. Ex. E at VAS 00000140.) The regulations define incapacitation as "a state where someone cannot make rational, reasonable decisions because they lack the capacity to give knowing consent (e.g., to understand the "who, what, when, where, why or how" of their sexual interaction)." (*Id.*) Vassar's regulations make clear that "[c]onsumption of alcohol or drugs alone is insufficient to establish incapacitation." (*Id.* at VAS 000000141.) As Mr. Kelly testified, panel members are trained specifically to distinguish between intoxication and incapacitation. (Kelly Dep. 20:8-21.)

---

5. Yu also mischaracterizes Mr. Williams' testimony about Vassar's own internal review of how it handles sexual misconduct cases. As he testified, Vassar "frequently" evaluates how it handles such cases; it is "consistently looking at [its] policies, looking at ways to always improve." (Williams Dep. 30:19-31:8.)

An accused student cannot escape accusations that he took advantage of another student who was incapacitated by arguing that he was also drunk. Rather, Vassar uses a reasonable person standard—"The question of incapacitation is determined on a case-by-case basis. It will include an analysis of whether the accused knew, or a sober, reasonable person in the position of the accused should have known, that the complainant was incapacitated." (Brown Aff. Ex. E at VAS 000000141.)

Far from showing that Vassar's definitions of consent or incapacitation violate Title IX, Yu has put before this Court authority that endorses the reasonable person standard used by Vassar. Yu's Notice of Supplemental Authority filed shortly after Vassar filed its Reply brief includes an April 28, 2014 Wall Street Journal article in which Brett Sokolow, director of the Association of Title IX Administrators, identifies the reasonable person standard as a definition of incapacitation that *would not* discriminate against males:

> In his view, a drunken sexual encounter should be considered an assault only if the facts show that the accuser was *incapacitated* by alcohol and that the accused had *mens rea*, or guilty intent: the 'knowledge of that incapacitation, whether actual or constructive'-- in other words, <u>'that the respondent know or should have known'</u> of the complainant's incapacitation.

(Pl.'s Notice of Supp. Auth. Ex. B (emphasis added).)

Yu's argument that the panel did not "engage[] in a meaningful inquiry into whether [Yu] knew or should have known that [Complainant] was incapacitated" is directly contradicted by Mr. Kelly's testimony. (Pl.'s Supp. Br. 7.) Mr. Kelly testified that the panel evaluated "[t]estimony from [Complainant], from Mr. Yu, from the witnesses" to determine if Yu knew or should have known Complainant was incapacitated. (Kelly Dep. 139:14-19.)

Even if it were necessary for Vassar to consider whether an accused student was incapacitated, such an inquiry would not be relevant here. Yu has never argued, either in this

5

litigation or during his disciplinary hearing, that he was so intoxicated so as to be incapacitated. (Kelly Dep. 151:13-18, 153:8-14.)  Indeed, the panel heard testimony from another student who said that he spoke with Yu shortly after the incident and that Yu did not appear to be intoxicated. (Roellke Aff. Ex. A at VAS 00001324; *see* Horowitz Aff. Exs. A, F.)  Further, even if Yu were intoxicated, Title IX would not be violated by Vassar finding he engaged in sexual misconduct. The Sixth Circuit affirmed summary judgment in favor of a university on a student's Title IX claim where the accused student "although intoxicated, was sufficiently aware to recall the incident and . . . [the complainant] was probably unable to remember the event." *Mallory v. Ohio University*, 76 Fed. App'x 634, 640-41 (6th Cir. 2003).

## CONCLUSION

For the foregoing reasons and the reasons set forth in Vassar's Motion and supporting briefs, Vassar's motion for summary judgment should be granted in its entirety.

Dated:   New York, New York
         August 11, 2014

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s/ George A. Davidson
    George A. Davidson
    Ned H. Bassen
    Alexander W. Bogdan
    One Battery Park Plaza
    New York, New York 10004
    (212) 837-6000
    davidson@hugheshubbard.com
    bassen@hugheshubbard.com
    bogdan@hugheshubbard.com

Attorneys for Defendant Vassar College