UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

XIAOLU "PETER" YU,                                    :

                                                      :

                                Plaintiff,            :

                                                      :          13-cv-4373 (HB)

            -against-                                 :

                                                      :          DECLARATION OF
VASSAR COLLEGE,                                       :          XIAOLU "PETER" YU

                                                      :

                                Defendant.            :
-----------------------------------------------------------------X

I, Xiaolu "Peter" Yu, declare pursuant to 28 U.S.C. 1746:

1.      I am the Plaintiff in the instant action and I submit this Declaration in opposition to Defendant Vassar College's Motion for Summary Judgment.

### I.     The Evening of February 18, 2012

2.      As outlined in the Complaint, on the evening of February 18, 2012, I went to a rowing team party on campus and saw                          , who was a fellow rowing teammate.

3.      That same night, I was supposed to meet with                          , who was also a fellow rowing teammate and a good friend of mine at the time.              and I had previously been intimate together, but we never had sexual intercourse.

4.      At the rowing party,              and I consumed alcohol, and toward the end of the party, we began to talk to each other. During our conversation, I learned that              had just broken up with her boyfriend. As we talked,              voluntarily made two drinks for me. As the party died down,              and I left the party together and walked to, Matthew's Mug a/k/a "The Mug", which is a social hangout venue on campus.              was walking to The Mug just fine and did not require any assistance in walking to The Mug. To the contrary,              placed her arm around my shoulders as a sign of intimacy.

5.       Upon entering The Mug,              and I kissed for a while.  As the night continued on, I asked              if she wanted to have sex and she agreed.  Figuring out where to go,              phoned her roommate to inquire about the "availability" of her dorm room at Strong House.              advised me that she could not get in touch with her roommate so we decided to go back to my dorm room at Jewett House instead.

6.              placed her arms around me again as we walked from The Mug to Jewett House.  It was during this time that              and another fellow rowing team member,              , claimed to have observed              walking with me on campus arm in arm.  It was at this time that              realized that I was hanging out with              instead of meeting with her as planned earlier that night.

7.       As we continued to walk to Jewett House,              asked me whether I wanted to have breakfast or dinner with her the next day, to which I responded, "no".  Upon reaching my dormitory, we took the stairs to my room on the fourth floor.

8.              went to use the bathroom on the fourth floor before meeting me back at my dorm room.  When              came to my room, I left to use the bathroom myself while              waited for me in my room.  If she did not want to be there,              had the opportunity to leave.              stayed in my room and was waiting for me when I got back.

9.       Upon my return to the dorm room, I told              that it was "my first time" and she responded, "it's okay, I know what to do".              then began to undress herself.  I did the same with my clothes, with the assistance of              .

10.       Standing naked in front of each other, I made a self-deprecating remark about my physical appearance to lighten the mood, but              reassured him.  We began to kiss and              began to perform oral sex on me stating, "I know how to do this; I have done this

2

before".            picked up the condom next to the bed, and using her hand and her teeth, she ripped it open to place it on me.  I began performing oral sex on            while she instructed me on where and how to do so.  At one point,            asked me, "Did you learn this from the internet or do you just now it by yourself?"  We began engaging in sexual intercourse while kissing the entire time.  At one point,            changed positions and got on top of me.

11.    While in the act, my roommate,            , entered the room and, after seeing me and            , I asked him to leave.  Following the interruption, we did not resume sexual intercourse.            began to lament about her ex-boyfriend and stated that she was not ready to jump into "anything new".            began to get dressed again and commented on how she "took my virginity".

12.    Shortly after            left my dorm room, my student fellow/resident advisor,            , knocked on my door.            asked me to step out into the hallway and questioned me about my "party habits".  Meanwhile, I noticed a fellow rowing team member and Vassar College student,            , standing at the doorway of my dorm room.  Later it was discovered that            had coordinated with            that night so that she would have the opportunity to enter Peter Yu's dorm room to do a "search" for            while            distracted Peter Yu in the hallway.  Of course            's "search" yielded nothing since            had already left Peter Yu's room by that time.

13.    The next morning, on February 19, 2012,            advised me that fellow students at Vassar College, whose identities were later discovered to be            (my former romantic interest and fellow rowing team member) and            (a close friend of            's and also a fellow rowing team member), had spotted me walking with

3

who appeared to be drunk, and tried to alert campus security. However, campus security never visited me the night before.

## II.      The Days, Months and One Year Following the Evening of February 18, 2012

14.      Later in the day, on February 19, 2012, I exchanged several Facebook emails with                    wherein                    reassured me that she "had a wonderful time last night", that she was "really sorry [she] led [me] on last night" and that she just wasn't ready for a serious relationship since she was "too close to [her] previous relationship to be in one right now". Attached as **Exhibit A** is a copy of the Facebook email exchanges.

15.                             and I continued to exchange friendly emails on Facebook on March 20, 2012, May 3, 2012, May 4, 2012, May 15, 2012, and October 9, 2012. In fact, one month after the alleged incident,                    initiated a Facebook email to me to, once again, "apologize for that night about two months ago" and said she was "really sorry" and that she "[didn't] want it to effect [their] friendship or team dynamic". At one point,                    even text messaged me to invite me to dinner at her home.                    initiated 50% of the emails to me on her own. At no time did                    ever indicate that she was fearful of me or that she believed that we engaged in anything other than consensual sexual intercourse.

## III.      The False Complaint of Sexual Misconduct is Filed One Year Later

16.      Out of the blue, on February 19, 2013, **exactly one (1) year following the incident**, I received a written notice from the Dean's Office at Vassar College advising me that I was banned from participating on the rowing team and could not enter the Strong House dormitory due to a "recent allegation". At the time, I was not advised what the allegation was or who made the allegation.

Case 1:13-cv-04373-RA-MHD   Document 76   Filed 05/16/14   Page 5 of 14

**IV.    Vassar Conducts A Biased & Inadequate Investigation**

17.    The next day, on February 20, 2013, I was summoned to meet with Vassar College's Title IX Coordinator, Richard Horowitz, for questioning.  I was asked about my encounter with              on the evening of February 18, 2012 to the morning of February 19, 2012.  I told him that we engaged in consensual sex and provided him with a record of Facebook emails between me and              and a written statement.  See **Exhibit A**.  During this time, Vassar College would not confirm the identity of who filed the charges against me and what the formal charges were.  I was not allowed to view any files, documents or statements during this time in the investigation process.

18.    It was not until **one (1) week later**, on February 27, 2013, that I first received from Vassar College the formal notice of charges for violations of Section 5.05 (Sexual Misconduct) and Section 20.1 (Sexual Offenses) of the Student Handbook.  I was shocked by the allegations of sexual assault against me for the evening of February 18, 2012 ("Allegations") because I never raped              we had one night of consensual sex.

19.    In the February 27, 2013 notice of charges, I received a copy of a few pages from the Student Handbook on my rights as the "Respondent/Accused".  However, at no time did anyone, including Richard Horowitz, explain these rights in any detail to me.  At no time did anyone advise me of what "counseling, mental health, medical or student services, both on campus and in the community" were at my disposal.

20.    I requested confirmation that the Panel would not be biased by reason of gender or familiarity with Professor              , Professor of Geology at Vassar College.  Since Professor `   is.              father, I was worried that faculty members on the Panel would be more prone to give deference to his daughter.  Also, I was entitled to members of both

genders on the Panel pursuant to Vassar College Regulations and, as such, I tried to confirm that both genders would be present.  However, Mr. Horowitz was dismissive of and unhelpful with my requests.  See **Exhibit B**.

21.    At all times, I denied all Allegations and reported that                   was guilty of filing a false complaint against me.  However, Vassar College ignored my complaint about false allegations and did not follow up with any formal charges against            .  It has recently been discovered that Vassar College expelled two (2) students for creating hoax bias incidents; one of those students was a committee member of the Sexual Assault and Violence Prevention Program at Vassar College.  See Daily Caller Article, dated December 11, 2013, **Exhibit C**.

22.    Although I advised Mr. Horowitz that there were at least two (2) other key witnesses, including, my roommate at the time,                  , and               's roommate at the time, Mr. Horowitz failed to call them as witnesses at the Hearing and, upon information and belief, he failed to conduct a reasonable investigation of them.  In fact, it appears that he expressed initial reluctance to even contact them for questioning.  See **Exhibit D**.

23.    I was not allowed to review any documents or statements related to the formal charges until **two (2) weeks later**, on March 4, 2013.  When I viewed the contents of my education file, I personally observed written statements and responses made by            and another student,                   together with copies of the notices of formal charges, "investigation notes" from Richard Horowitz, and Facebook messages between me and                   (collectively, "Investigation Notes").

24.    Vassar College scheduled a formal hearing for March 7, 2014 ("Hearing"), which was only **one (1) week** after I first received notice of the formal charges, and only *three (3) days*

after I was provided the opportunity to review the documents and statements in connection with the formal charges, which left me with no time to adequately prepare for my own defense.

25.    In fact, the Hearing was scheduled just days before midterms.  As a result, I requested a short adjournment of the Hearing date in order to focus on studying for my midterms.  See **Exhibit E**.  The Dean of Students, David D.B. Brown asked to meet me in person to discuss my request.  It was at that time that he refused to grant the request and, in his refusal, implied that my participation in midterms would be in vain.  In stark contrast, it appears that              was readily offered "academic relief" and "accommodations" with respect to her exam schedule during the same time period through the help of                 and        See **Exhibit F**.

26.    It also appears that, during the time of the investigation, Mr. Horowitz sent an internal email to the Title IX Coordinator, Julian Williams, and Kim Squillace expressing the extreme deference that was to be given to .            stating, "I think we need to be a little careful with her today..."

**V.    The Hearing on March 7, 2013**

27.    At the Hearing, the voting panel members were: Jane Parker, a Physical Education Lecturer, Sophia Harvey, Assistant Professor of Film; and Jamie Kelly, an Assistant Professor of Philosophy.  Luis Inoa, an Assistant Dean, was the non-voting chairperson.  Also present were my support person, Professor Robert Rebelein,           , her support person,               ,             ,            ,           and Mr. Horowitz.

28.    If I wanted to ask any questions to the witnesses, I had to present them first to Mr. Inoa.  Mr. Inoa would decide whether he believed my questions were "relevant" before presenting the question            , Mr. Horowitz or the witnesses.  I had a list of questions that

I wanted to ask to each witness about their observations on the evening of February 18, 2012. I had questions for _____ about the inconsistencies of her statements at the Hearing as compared to her actions on the evening of February 18, 2012 and her statements in her Facebook messages. I also had questions for Mr. Horowitz regarding the sufficiency of his investigation and his decision-making with respect to the two additional fact witnesses that I advised him about. Mr. Inoa refused to ask many of my cross-examination questions to the witnesses and he allowed the witness to resort to crying and to give unresponsive answers when questioned. My cross-examination of _____, the witnesses and Mr. Horowitz was effectively denied.

29.     During the Hearing, I was denied the effective assistance of any advisor since my advisor was not allowed to say anything during the Hearing on my behalf.

30.     Additionally, Mr. Horowitz and the Panel received the exculpatory evidence of Facebook messages between me and _____ but failed to give any weight or consideration to them during the Hearing. In fact, in one email from Mr. Horowitz, he makes light of the meaning of "exculpatory" in the context of disciplinary hearings and stated, "It's you and about .005% of the population that knows what 'exculpatory' means. :-)". See March 5, 2013 Emails between Rich Horowitz and Julian Williams, **Exhibit D**.

31.     Furthermore, it seemed that the Panel did not give any consideration to the fact that _____ never filed any police report about the incident and did not seek a health examination/rape kit in connection with same.

## VI.     The Panel Finds Me "Responsible" For All Charges & Metes Out A Disproportionately High Sanction

32.     At the end of the Hearing, the Panel immediately found me "responsible" for all violations, notwithstanding the lack of any evidence that _____ and I engaged in anything

other than consensual sex ("Decision"). I was expelled "effective immediately" and was banned from campus ("Sanction").

33.    Vassar notified me of the Decision by formal letter, dated March 8, 2013. See March 8, 2013 Letter from D.B. Brown to Peter Yu, **Exhibit G**. In the letter, Vassar College failed to provide me with a detailed factual finding of the basis for the Decision. It appears that the Panel noted its "reasoning" for the Decision in a document entitled, "Recommended Format for Panel Recommendations," which was addressed to David D.B. Brown. See "Recommended Format for Panel Recommendations," **Exhibit H**. However, this document was never provided to me prior to the instant lawsuit.

34.    I was shocked by the Decision and the severity of the Sanction of expulsion. It appeared that the Panel did not even consider the Facebook messages with respect to the Decision. See "Recommended Format for Panel Recommendations", **Exhibit I**. It also appears that Mr. Horowitz was dismissive of the relevance of the Facebook messages during his investigation. See March 1, 2013 Email Between Rich Horowitz and Kim Squillace, **Exhibit J**.

35.    According to the sanctioning parameters set forth by Vassar College, the sanctions applicable to the charges in my case, namely, Section 5.05 and 20.02, are suspension to expulsion. See Vassar College Student Conduct Sanctioning Parameters, **Exhibit K**. The Interpersonal Violence Panel Rules and Procedures state that character statements and impact statements will be taken into consideration when the panel considers the severity of the sanctions. See Interpersonal Violence Panel Rules and Procedures, **Exhibit L**. Additionally, the Vassar College Regulations 2012/2013 consider the "precedents in similar cases" and "student's disciplinary record". See Vassar College Regulations 2012/2013, **Exhibit M**, p.175. I submitted three (3) character statements written on my behalf (see **Exhibit N**) and my impact statement

(see **Exhibit O**).  I had no prior history of sexual misconduct on my disciplinary record.  Also, I am now aware that the Panel received a precedent of another student found "responsible" of the same charges, Section 5.05 and 20.02, and only received suspension for one term.  See Precedents, **Exhibit P**.  Notwithstanding, it appears that none of these factors were taken into consideration in considering the severity of the Sanction assessed to me based on the fact that I received the highest sanction possible pursuant to Vassar College's sanctioning parameters.  Such fact is also confirmed by the Panel's written "reasoning" for the Decision as enumerated in the "Recommended Format for Panel Recommendations".  See **Exhibit I**.

## VII.   I Was Denied Any Effective Opportunity To Appeal The Decision

36.   Following my receipt of the Decision, and in anticipation of my appeal of same, I asked for a copy of the transcript of the Hearing, but was denied.

37.   Also, again, I was never provided with the "Recommended Format for Panel Recommendations," which purports to state the Panel's "reasoning" for the Decision.  See **Exhibit I**.  In any event, other than listing titles of documents considered, the "Recommended Format for Panel Recommendations" fails to provide a modicum of detail as to what information from such documents considered, or the analysis performed thereon, led to the Panel's Decision.

38.   As a result, I was foreclosed from any effective opportunity to appeal the decision.

## VIII.  Damages

39.   As stated in the Complaint, prior to enrolling in Vassar College, I was a successful high school honors student and student athlete at a prestigious high school academy in Connecticut.  At the time, I had a 4.19/4.33 grade point average, possessed numerous accolades,

wrongful expulsion from Vassar College.  From the outset, two (2) colleges (other than the above-referenced 10) advised me not to even bother applying after I referenced the circumstances of my departure from Vassar College.  Attached as **Exhibit Q** is copy of the advisements.  Following the commencement of this action, I applied to an additional (11th) college.

47.     During the transfer application process, each college required me to sign a waiver to allow them access to my education file at Vassar College.  If I failed to sign the waiver, my transfer applications would not be considered.  As a result, I was constrained to allow each of the eleven (11) colleges access to my education file at Vassar College.  However, instead of disclosing that portion of my education file that relates solely to my academic record, Vassar College disclosed, released and/or disseminated my full education file, including, that portion of my education file that relates to the false allegations of sexual misconduct made by

Also, upon information and belief, when asked to explain the circumstances of my departure from Vassar College by other education institutions, Vassar College's Dean of Students made oral and/or written statements to such education institutions elaborating on the false allegations of sexual misconduct made by              and Vassar College's decision, which found me "responsible" for such allegations.

48.     Due to Vassar College's disclosure, release and/or dissemination to the eleven (11) educational institutions of the existence of the Allegations, Investigation Notes and/or Decision contained in my education file, nine (9) out of the eleven (11) colleges rejected my applications and declined to grant me admission.  Furthermore, out of the nine (9) colleges who rejected my applications, *three (3) of them were colleges that had previously accepted me back in 2012.*  Many colleges specifically referenced the Hearing outcome contained in Vassar

Case 1:13-cv-04373-RA-MHD   Document 76   Filed 05/16/14   Page 12 of 14

College's Student Report and Special Dean's Report as the basis for their denial.  Attached as **Exhibit C** is copy of some of the rejection letters.

49.     As a result of Vassar College's *actions, I have sustained significant damages* including, without limitation, loss of educational and athletic opportunities, economic injuries, emotional distress, and other direct and consequential damages.  Specifically, I was thrown off the rowing team at Vassar College and my *educational career has been damaged because I have not been able to gain acceptance to an educational institution of the same caliber as Vassar College. Since my future employment prospects are directly tied to my educational career, such future employment prospects have been significantly compromised as well.*  Also, I am also suffering from regular sleep-related issues.  My physicians have prescribed me with sleeping aids and professional counseling as a result of the damages I have sustained from Vassar College.

50.     Notwithstanding my expulsion in March 2013 (only halfway through the semester), Vassar College insisted that I pay the balance of my tuition for the remainder of the Spring semester for the 2013/2014 academic year before it would provide any transcripts to me for purposes of applying to transfer colleges.  Eventually, I was accepted for transfer to another educational institution.

51.     During my junior year at my current educational institution, I sought to apply to educational institutions abroad in order to further my education and attempt to mitigate the significant damage that the Allegations and Decision have made, and continue to make, on my educational career and future employment.  My applications were due by March 1, 2014.

52.     On or about February 20, 2014, I made an application by Order to Show Cause to request that the Court enjoin Vassar College from: (i) disclosing, releasing and/or disseminating that portion of his education file that relates to the false allegations of sexual misconduct made

13

by                      ι to other educational institutions during the pendency of the instant

Motion and the underlying action; and (ii) making any oral or written statements with respect to

the circumstances of Mr. Yu's departure from Vassar College other than the following: "Mr. Yu

is no longer a student at Vassar College, and prior to the conclusion of his studies at Vassar

College, he was a student in good standing. My application was denied on the basis that I am

able to seek monetary damages for my lost opportunity during trial.

53.    However, February 25, 2014, the Court denied my motion for a preliminary

injunction on the grounds that my trial was pending in August and that I could seek damages at

trial for the one-year delay to apply to educational institutions abroad.


I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

**Dated:   New York, New York**
**           May 14, 2014**

Xiaolu "Peter" Yu

# EXHIBITS
# A THROUGH Q
# TO THE AFFIDAVIT OF
# PETER YU
# FILED UNDER SEAL